NELSON W. COOK *v.* MARYETTE L. LANE ET AL.

Special Term at Rutland, November, 1911.

Present: MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed October 23, 1912.

*Witnesses — Competency —Implies   Waiver —Water   Rights—*
*Aqueduct and Spring—Deeds—Construction.*

A general objection to testimony waives objection to the competency of the witness.

Failure to object to the competency of a witness testifying in a case makes him a competent witness throughout the trial, including a subsequent hearing.

Where orator's deed of his home place, drawn by C., also conveyed "a one-half interest in the aqueduct of water now running between said premises and the house of C., the said C. owning the other half of the same," and C.'s deed of his own land also conveyed "a

certain spring of water * * * being the same spring from which water now runs in" the same aqueduct, and the deed by C.'s heirs to defendant described the water right thereby conveyed as "one-half interest in an aqueduct that brings water to said premises, the other half being owned by" orator, and water from the aqueduct has been used by orator and his grantors for 75 years, frequently, uninterruptedly, openly, without objection, and under a claim of right, orator has a one-half interest in the spring itself, and not merely a one-half interest in the aqueduct.

APPEAL IN CHANCERY. Heard on the pleadings, master's report, and defendant's exceptions thereto, at the September Term, 1911, Rutland County, *Taylor*, Chancellor. Exceptions overruled, and decree for the orator. The defendant appealed.

*William W. Stickney, John G. Sargent* and *Homer L. Skeels* for the orator.

*T. W. Moloney* for the defendants.

MUNSON, J. The controversy relates to the orator's claim of ownership in a spring located on land of E. S. Burton, formerly owned by J. C. Burton. The record title introduced by the orator consists of two deeds; one from Leverett A. Ives to Jesse Sawyer, dated March 24, 1854; the other from Jesse Sawyer and wife to the orator, dated April 20, 1880; both of which convey the house and lot occupied successively by Sawyer and the orator. The first deed makes no mention of a water right, but the second contains the following: "Including one-half interest in the aqueduct of water now running between said premises and the house of Dr. John Crowley, the said Crowley owning the other half of the same."

The title shown by the defendants begins with a deed from J. C. Burton to John Crowley, the description in which is as follows: "A certain spring of water, * * * being the same spring from which water now runs in an aqueduct to a reservoir located between the house of said Crowley and that of N. W. Cook," with the right to enter upon the land "for the purpose of making all necessary repairs and doing whatever may be necessary to the full use of said water," * * * "provided the said Crowley

shall at all times keep in repair a trough or reservoir for the waste water from said aqueduct at or near the place where it now is for the use of the public as a watering place." The defendant Maryette took title from the heirs of Dr. Crowley by a warranty deed dated April 26, 1905, in which the water right is described as follows: "The said Maryette L. Lane is to have one-half interest in an aqueduct that brings water to said premises, the other half owned by Nelson Cook. * *" April 29, 1905, E. S. Burton executed to Maryette a quitclaim deed of the spring, with the right to take water therefrom to her house by pipes laid under ground. February 9, 1906, the heirs of Dr. John Crowley executed to the defendants a quitclaim deed of the spring, following in effect the description contained in J. C. Burton's deed to Dr. Crowley.

Material facts are found in part from testimony given by the orator of declarations made by Dr. Crowley regarding the ownership of the spring and aqueduct. It is claimed that this evidence was inadmissible because the declarations were those of a deceased party to the cause of action then on trial. The only objection made when the orator was first on the stand was a general objection to the evidence. This was not an objection to the competency of the witness, but operated as a waiver of that objection. *Watriss* v. *Trendall*, 74 Vt. 54, 52 Atl. 118; *Walston* v. *Allen*, 82 Vt. 549, 74 Atl. 225. At a subsequent hearing the orator gave further evidence upon the subject, and this was objected to because of the decease of Dr. Crowley. The objection is of no avail. The failure to object at the first hearing made the orator a competent witness in his own favor throughout the trial. *Cowles* v. *Cowles' Est.*, 81 Vt. 498, 71 Atl. 191.

The dwellings of the parties are on opposite sides of the road, nearly opposite each other. The spring is on the same side as the defendants' house, about forty rods from it. The aqueduct runs directly to and across the road, thence down the orator's side of the road, within the limits of the highway, to a point about four rods from the houses, thence diagonally across the road to a point in the highway opposite the defendants' house, thence by a course not precisely defined, which at one time ran through the cellar of defendants' house, to a receptacle located on the extreme edge of defendants' dooryard or just inside the highway, from which water was taken for domestic

use. A second receptacle, within the limits of the highway, was used by the owners and the general public for watering animals. The defendants, refusing the orator's offer to do his part, have now laid a new pipe to their house, changing the course to their side of the highway, and running the water into a receptacle wholly within their premises, with an overflow to a second receptacle within the limits of the highway, both of which are a few feet further down than the old ones; and they now exclude the orator from the use of the water, except as he takes it from the second receptacle as one of the general public.

The first information regarding this right that we have from the records is that contained in the deed to the orator, which is dated in 1880. The next deed touching the right is the one from J. C. Burton to Dr. Crowley, dated in 1882, which purports to convey the "spring of water," with the right to do "whatever may be necessary to the full use of said water." It does not appear when water was first taken from this spring, nor who furnished or laid the original conduit. But the master reports that water has run from this spring along the course above described, first in pump logs and then in a lead pipe, for more than seventy-five years. Dr. Crowley is known to have been living in the Crowley house in the forties, and he continued to own the property until his death in 1887. His heirs conveyed a life estate therein to his son Frederick, who died in 1902. Jesse Sawyer, the orator's grantor, who took his deed in 1854, and Dr. Crowley, whose heirs are the defendants' immediate grantors, are the first persons who are shown to have had anything to do with the aqueduct. Dr. Crowley and Sawyer, and their successors in title, have contributed from time to time to the repair and maintenance of both aqueduct and spring. No other person is shown to have taken part in the care of either.

It was understood and claimed by both Dr. Crowley and Jesse Sawyer that their rights and ownership in the water were equal. Before the orator purchased he inquired of Dr. Crowley regarding the water, and was told by Crowley that he owned one-half and Sawyer the other. Dr. Crowley drew the deed from Sawyer to the orator, which conveys a one-half interest in the aqueduct of water, and in which it is written that Dr. John Crowley owns the other half of the same. There is nothing to indicate that Dr. Crowley and Sawyer had any trouble or mis-

understanding about the water during the twenty-five years they severally occupied the premises now owned by these parties. Both came to the receptacle before described to get water for family use. The master concludes by finding that during the time the water was running to this receptacle, elsewhere placed at seventy-five years, it was used by the orator and his grantors frequently, uninterruptedly and openly, without objection on the part of defendants' grantors, under a claim of right on the part of the orator and his grantors, which was admitted by the grantors of the defendants.

It is argued for the defendants that the orator acquired nothing more than a one-half interest in the aqueduct, and no title whatever to the spring. The deed assumes to convey a "one-half interest in the aqueduct of water now running" between the premises conveyed and the house of Dr. John Crowley. We think that an interest in an aqueduct of running water is an interest in the water as it flows, and that this must include an interest in the water as it enters the aqueduct, and therefore an interest in the spring itself.

The inception of the water right is left undetermined. Nothing appears as to the origin of the right claimed by Sawyer. Dr. Crowley took a deed of the entire spring in 1882, but never claimed under it. The defendants' first deed—the warranty from the Crowley heirs—conveyed a one-half interest in the aqueduct, and recited that the other half was owned by the orator. The first deed to defendants which purported to convey a larger right was from E. S. Burton, and was dated April 29, 1895, which was nine days after the orator himself had completed fifteen years of adverse use. The defendants' brief treats the case as presenting the question of a license from some former owner of the land, and claims that the findings regarding the worn condition of the aqueduct at the time of their purchase show that the license had expired, and that by reason of this the defendants, as grantees of E. S. Burton, are the owners of a new right. This treatment of the case is precluded, both by facts specially found, and by the comprehensive concluding finding above recited.

*Decree affirmed and cause remanded.*