ROBERT H. HASLAM *vs.* FRED A. PERRY, Adm'r.

Androscoggin.   Opinion October 10, 1916.

*Part payment as renewing outlawed account.   Burden of proof as to such alleged payments.*

In an action of assumpsit, brought by the plaintiff against the administrator of his brother's estate to recover $1350., the balance due on an alleged loan made nearly thirty years ago, it is

*Held;*

1.   That, although the evidence is weak and rather unsatisfactory, there may be sufficient to substantiate the plaintiff's claim that the loan was made, fourteen hundred dollars in 1886, and five hundred dollars in 1887.

2.   That at the expiration of six years from the date of the original loan the Statute of Limitations intervened and continued to be a bar to the enforcement of the claim for fifteen years longer, before any alleged payment was made.

3.   That the intentional part payment of debt constitutes an acknowledgment of its existence and a renewal of its obligation, however old the debt may be.

4.   That the evidence fails to convince the Court that the intestate ever intentionally made partial payments on this outlawed claim or in any way acknowledged its existence or renewed the obligation.   The facts and circumstances negative rather than confirm the plaintiff's contention.

Action of assumpsit to recover certain sums of money alleged to be due and owing to the plaintiff from defendant's intestate. Defendant pleaded general issue and brief statement, setting forth statute of limitations.   Case reported to Law Court upon certain agreed statements and admissions.   Judgment for defendant.

Case stated in opinion.

*Edgar M. Briggs,* for plaintiff.

*Ralph W. Crockett,* for defendant.

SITTING:   CORNISH, KING, BIRD, HALEY, PHILBROOK, MADIGAN, JJ.

CORNISH, J. The plaintiff seeks to recover from the administrator of the estate of James K. Haslam the sum of thirteen hundred and fifty dollars, balance due on money loaned. Robert H. Haslam and James K. Haslam were brothers. The former lived in Massachusetts, the latter at one time in Cleveland, Ohio, and later in Lewiston, Maine, where he died on April 2, 1913. The debt was created, as the plaintiff claims, by three checks, introduced in evidence, drawn in North Adams, Mass., on the Berkshire National Bank by R. H. Haslam & Co., and made payable to the order of James K. Haslam, the first on August 6, 1886, for four hundred dollars, the second on November 26, 1886, for one thousand dollars, and the third on April 6, 1887, for five hundred dollars. The first and second bear the indorsement of Jas. K. Haslam, the third that of "Jas. K. Haslam for Haslam & Co." As these checks were paid the transfer of the nineteen hundred dollars from the plaintiff to his brother is proved.

The plaintiff claims that these sums constituted a loan. There is no other written evidence of the fact than the checks themselves. No note was given, and no letter or memorandum is produced. The checks were drawn about thirty years ago, and twenty-seven years prior to the death of James K. Haslam. Silence reigned for over twenty years, a situation which in itself naturally suggests either that the checks did not represent a loan or that, if they did, the debt was subsequently paid. Common business experience raises a doubt. But the plaintiff's wife, the admissibility of whose evidence we shall consider later, testified to the loan of the money and to the circumstances under which the checks were sent. The son, Robert T. Haslam, also states that his uncle admitted the indebtedness in a conversation with him. On the whole, taking the unexplained checks, and this oral testimony, we think there is sufficient evidence to substantiate the plaintiff's claim that the loan was made, fourteen hundred dollars in 1886 and five hundred dollars in 1887.

But the statute of limitations intervened at the expiration of six years from the date of the respective checks and continued to be a bar to the enforcement of the claim for fifteen years longer, when on February 1, 1908, as the plaintiff claims, the silence was broken and his brother made him a partial payment of one hundred and fifty dollars, on September 12, 1910 of two hundred and fifty dol-

lars, and on January 30, 1911 of one hundred and fifty dollars, a total of five hundred and fifty dollars, all on account of the old loans, thereby removing the bar of the statute, and reviving and renewing the liability. R. S., ch. 83, sec. 103. It is familiar law that the intentional part payment of a debt constitutes an acknowledgement of its existence and a renewal of its obligation; it matters not how old the debt may be. *Sinnett* v. *Sinnett,* 82 Maine, 278; *Pond* v. *French,* 97 Maine, 403.

These alleged partial payments are evidenced by three joint and several promissory notes, all dated at Taunton, Mass., and payable to the order of the Bristol County National Bank from which institution the money was borrowed. The original notes are not in evidence, but none of them has been paid and by agreement the renewal notes are offered as being substantially the same as the originals. These notes bear the following signatures, and in the order given, viz: that of February 1, 1908, R. H. Haslam, J. K. Haslam & Co., J. K. Haslam, R. T. Haslam; that of September 12, 1910, R. H. Haslam, R. T. Haslam, J. K. Haslam and J. K. Haslam & Co.; and that of January 30, 1911, R. H. Haslam, R. T. Haslam, J. K. Haslam & Co., J. K. Haslam and Clinton V. Sanders. R. T. Haslam is the son of the plaintiff and while his name appears on the renewal of the note of February 1, 1908, he testifies that it was not on the original of that date, but was added at some subsequent renewal.

In order to connect these notes with the original loan and to convert them into intentional partial payments thereof, the plaintiff introduced the testimony of his wife and of his son, R. T. Haslam. If seasonably objected to, the testimony of the wife would have been inadmissible. R. S. Ch. 84, sec. 112, par. II; *Berry* v. *Stevens,* 69 Maine, 290; *Hubbard* v. *Johnson,* 77 Maine, 139; *Hollowach* v. *Priest,* 113 Maine, 510. No objection however was made to the testimony, and we think the defendant has waived the right to object now. True, the case is reported to the Law Court upon so much of the evidence as is legally admissible, but there is an admission by the parties themselves that the depositions taken to be used at the hearing before the commissioners on insolvency "may be used at this trial with the same effect as though taken to be so used." Further it is stipulated by counsel in the caption to the wife's deposition that it "may be used as her deposition by

either party in the hearing before commissioners . . . or before any other court on any appeal from said commissioners." And the counsel for the defendant in his brief refers to the wife's testimony and characterizes it as the only direct evidence of the particular transaction. Under these circumstances we think the evidence of the wife is properly before this Court for consideration.

Her testimony is in substance that James K. Haslam raised these three sums on these notes and turned them over to her husband, the plaintiff, in recognition and part payment of the old loan, and that they were used for the education of their son, Robert T. Haslam. The son corroborates this.

But so many facts and circumstances militate against this claim that we find ourselves unable to accept it. It may be that the money was used for the education of the son, especially as his name appears upon the notes, but we do not think they were partial payments on the old checks. In the first place these three notes upon which the plaintiff relies are not the only ones given to the same bank bearing the signatures of the plaintiff and of James K. Haslam whom, for the sake of convenience, we will call the defendant. They are only three out of nine, and all nine apparently pertain to a certain course of business between the parties. Exactly what that was does not appear. Whether the money was raised for the benefit of the plaintiff or of the defendant, or both, is merely a matter of conjecture; but the fact is prominent that a series of nine joint and several notes were given by the plaintiff and the defendant between May 17, 1907, and January 30, 1911, none of which was paid, all of which were renewed from time to time and are still in existence. They aggregate seventeen hundred and eighty-five dollars. They are substantially the same in form, and vary in amounts from $100 to $485. Of these nine the plaintiff claims the proceeds of the third, seventh and ninth to have been payments to him on account of the loan made more than a quarter of a century before. Then why not the other six?

It is significant that on every note the first signer is R. H. Haslam, the plaintiff, followed in four by J. K. Haslam & Co. and J. K. Haslam, and in five by J. K. Haslam and J. K. Haslam & Co.; followed also in three by R. T. Haslam, and in one, the alleged payment note of January 30, 1911, by an outside party one Clinton

V. Sanders. Both the wife and son testify that the notes were sent to the defendant at Lewiston, signed by him and then returned and signed by the plaintiff. The notes themselves disprove this and the prima facie presumption is that the parties were successive signers in the order in which their names appear. *Coolidge* v. *Wiggin,* 62 Maine, 568.

It is evident that both the plaintiff and the defendant between 1907 and 1911 were borrowing money frequently from the bank on their joint and several notes, with the plaintiff as the first maker. Some one was in need of funds and the need was growing. It is hardly credible that three of these notes, similar in general terms to all the others, were given by the defendant to hire money with which to pay off a portion of his brother's outlawed indebtedness when he was unable to pay off his own indebtedness already due to the bank, and when his financial condition was continually growing worse and ended in an insolvent estate at his death. In a letter written to the plaintiff under date of March 7, 1913, the defendant encloses two renewal notes, one of which was the renewal of one of these alleged payment notes and the other was not. He treats both alike but insists on the signature of Robert T. to the payment note, and also reveals his financial straits.

Moreover we find no indorsement of these alleged payments upon any of the original checks, which we would expect to find if such payments had been made. Instead we find that the words "as loan" have been written into the original checks, but the evidence shows that these words were inserted not at their inception but in February or March, 1913, twenty-six or twenty-seven years after the checks were drawn, and a few days or weeks prior to the defendant's death. The son states that they were written in by his father in the presence of the defendant, but he could have no personal knowledge of the fact because he also testifies that he never saw the checks until the summer of 1914. Moreover if they were inserted with the knowledge and consent of the defendant as a part of a business transaction between the two brothers, it is strange that no deduction was made or credit given for the five hundred and fifty dollars which, according to the plaintiff's contention, had been paid on account prior to that time. And it is equally strange that the parties did not put the indebtedness in the form of a

promissory note if they were then having a business settlement. We cannot regard the insertion of these words in any other light than as very damaging to the plaintiff's cause, and we fear that James K. Haslam never saw them.

In conclusion we need only say that the burden rested upon the plaintiff to convince this court of the legality of his claim against his brother's estate. This he has failed to do and the entry must therefore be,

*Judgment for the defendant.*