IBÁÑEZ, DEMANDANTE Y APELANTE, *v.* DIVIÑÓ, ETC., DEMANDADA Y APELADA.

APELACIÓN procedente de la Corte de Distrito de Mayagüez en pleito sobre nulidad de contrato.

No. 1595.—Resuelto en mayo 22, 1917.

ELIMINACIÓN DE ALEGACIONES—CONTESTACIÓN DEL DEMANDADO—EXCEPCIONES—ORDEN NO EXCEPCIONADA POR MINISTERIO DE LEY—AUSENCIA DE PARTE.—No es materia a considerar por un tribunal de apelación el que la corte inferior

se negara a eliminar la contestación a una demanda y la "materia nueva" contenida en la misma, cuando de los autos no aparece que se tomara excepción a la orden de la corte negando la eliminación solicitada o que se encontrara ausente el demandante al dictarse la orden, pues una orden *rehusando* eliminar una alegación no es una de aquellas órdenes o resoluciones que se consideran excepcionadas por ministerio de la ley.

PRUEBAS—OBJECIONES DE CARÁCTER GENERAL.—De acuerdo con la jurisprudencia, para que una objeción a la admisión de prueba pueda ser considerada en apelación, no solamente debe ser sobre un punto sustancial que afecte los derechos de las partes, sino que también el fundamento de la misma debe expresarse precisamente, pues objeciones de carácter general no son suficientes.

NULIDAD DE CONTRATO—VENTA SIMULADA—PRUEBA ADMISIBLE.—Cuando se alega que cierta venta de inmuebles es simulada, no puede sostenerse que sea prueba impertinente demostrar que no sólo se hizo constar la traslación del dominio en un documento público, sino que de hecho se verificó, entrando el comprador a percibir los productos de los bienes adquiridos.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. Angel A. Vázquez y E. H. F. Dottin.*

Abogados de la apelada: *Sres. José Sabater y Joaquín Martínez Cintrón.*

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del tribunal.

La demanda, origen de este caso, se entabló por un menor de edad, representado por su padre, en solicitud de que se declarara falsa cierta deuda reconocida por el abuelo del menor en testamentos que otorgara en 1892, 1898 y 1908, y nula la venta de ciertos inmuebles simuladamente hecha para pagar la deuda falsa. Las alegaciones son extensas y también lo fué la prueba practicada. La corte falló en contra del demandante, y transcribiendo los hechos declarados probados por ella, se forma un concepto claro y preciso de todas las cuestiones envueltas en el pleito.

"1. Hace 24 años, o sea en 15 de junio de 1892 y por una escritura pública otorgada en esta ciudad ante el notario Lcdo. Santiago R. Palmer, Don José Nicanor Pecunia hizo su testamento, en el cual, además de otras disposiciones, hizo la siguiente:

" '*Declaración especial:* Declara que está debiendo a su hermana Doña Apolinaria Diviñó la cantidad de quince mil pesos moneda

corriente que le ha facilitado en diferentes épocas para atender a la compra de una finca rústica, su fomento y otras atenciones y por lo que con preferencia a todo será abonada la expresada suma.'

"2. Por otra escritura pública No. 77, otorgada en esta ciudad a 4 de abril de 1898, ante el propio notario Ldo. Santiago R. Palmer, el prenombrado Don José Nicanor Pecunia, hizo de nuevo su testamento, revocando el relacionado en el párrafo anterior, en el cual además de otros extremos, volvió a repetir la declaración especial de estarle adeudando a Doña Apolinaria Diviñó la suma de quince mil pesos a que se ha hecho referencia en dicho testamento anterior.

"3. Por escritura pública otorgada en esta ciudad bajo el No. 307, a 30 de mayo de 1908, ante el notario Ldo. Mariano Riera Palmer, el propio Don José Nicanor Pecunia traspasó por título de venta absoluta a favor de Doña Apolinaria Diviñó las fincas descritas en el párrafo 8º. de la demanda enmendada, en adjudicación de **pago** de la deuda que había reconocido el vendedor primeramente por su testamento de 15 de junio de 1892 y por el segundo de 4 de abril de 1898.

"4. Por escritura pública número 309 otorgada asimismo en esta ciudad a 31 de mayo de 1908, ante el notario Ldo. Mariano Riera Palmer, el mismo Don José Nicanor Pecunia hizo su último testamento que es el que ha quedado vigente, en el cual además de otros extremos propios de la naturaleza de tal documento, declaró que los quince mil pesos que declaró adeudar a su hermana Doña Apolinaria Diviñó los había pagado dándole en pago las fincas urbanas a que se ha hecho referencia.

"5. Por escritura pública No. 351, otorgada en esta ciudad, a 1º. de junio de 1910 ante el notario Ldo. Mariano Riera Palmer, se practicó la partición de los bienes relictos al fallecimiento de Don José Nicanor Pecunia, basándose en el testamento de 31 de mayo de 1908, relacionado en el párrafo anterior, en cuya partición concurrió e intervino el menor demandante representado por su padre José Ibañes, recibiendo la parte de la herencia que en dicha partición le correspondió.

"6. Desde 30 de mayo de 1908 en que se otorgó la escritura de de venta por adjudicación de pago a favor de Doña Apolinaria Diviñó, de las casas objeto de este pleito, dichas casas fueron administradas por Don Juan R. Martínez, en nombre y representación de la compradora Doña Apolinaria Diviñó, quien percibía y percibió hasta su muerte los productos y rentas de las mismas, ejercitando desde entonces actos dominicales sobre dichas propiedades.

7. Don José Nicanor Pecunia falleció en su hacienda denominada 'Rolón,' el 7 de diciembre de 1909, y Doña Apolinaria Diviñó falleció en esta ciudad el día 1º. de mayo de 1914.

"8. La prueba es contradictoria con respecto a la solvencia o insolvencia de la acreedora y compradora Doña Apolinaria Diviñó, pues mientras al demandante ha tratado de probar con sus testigos que Doña Apolinaria Diviñó era pobre y era ayudada por su hermano Don José Nicanor Pecunia, el demandado ha presentado prueba para contradecirla, consistente en la escritura de 1875 por la que Doña Apolinaria adquiere la mitad en condominio de la casa de la playa de esta ciudad en que vivía Don Nicanor y Doña Apolinaria con sus familiares, cuyo condominio retiene como dueña hasta el año de 1897, en que lo vende a su sobrina José Emilia Pecunia; en otra escritura del año 1865 por la que Don José Miret vende a Doña Apolinaria y otras personas una finca rústica de 67 cuerdas de terreno por 8,800 escudos moneda corriente en aquella época; y la declaración de Luisa Pacheco, persona de alguna edad, tendente a demostrar que Doña Apolinaria disponía de dinero y era mujer trabajadora y laboriosa; por todo lo cual y apreciando además la demás prueba en conjunto la corte llega a la conclusión de que sobre este punto en que ha versado la mayor prueba del demandante, la cual es muy débil e insuficiente, no se ha demostrado que Doña Apolinaria Diviñó fuera tal pobre insolvente, y que viviera en la mayor miseria.

"9. No ha habido evidencia alguna ni se ha intentado probar por el demandante siquiera, como se alega en la demanda, el acuerdo o conspiración fraudulenta entre Doña Apolinaria Diviñó y Don José Nicanor Pecunia, para despojar a su hija de éste Isabel Georgina Pecunia, de la mayor parte de su haber hereditario, ni tampoco ha habido prueba para demostrar que la declaración de deuda hecha por Don José Nicanor Pecunia en su testamento de 1892, fuera falsa o simulada, ni que la escritura de venta en adjudicación de pago de 30 de mayo de 1908 por Don Nicanor a Doña Apolinaria fuera simulada y falsa o se hiciera para defraudar al menor demandante, por cuyo motivo la acción del demandante fracasó también en este particular.

"10. Con respecto a la alegación XII de la demanda del demandante cuando el demandado comenzó a practicar su prueba para demostrar lo contrario, el demandante retiró su alegación, pero el demandado practicó toda su prueba demostrativa de que la que ejercía el absoluto control y disponía de las rentas de las fincas urbanas objeto de este pleito, lo fué la compradora Doña Apolinaria Diviñó.''

En su alegato la parte apelante señala diez errores que pueden estudiarse en tres grupos, a saber: 1, cometidos antes del juicio; 2, con motivo de la práctica de las pruebas, y 3, al apreciar la evidencia.

1. Sostiene el apelante que la corte de distrito erró al no eliminar la contestación de la demandada y la "materia nueva" contenida en la misma.

Forma parte de los autos un pliego de excepciones y de él no aparece que el demandante tomara excepción a la orden de la corte negando la eliminación solicitada. La moción del demandante se incluye en la transcripción del récord y también la orden de la corte. De esta última resulta que la moción fué discutida en corte abierta por los abogados de ambas partes y resuelta luego por la corte, sin que conste de los autos que se tomara excepción o que se encontrara ausente el demandante. Bajo tales circunstancias, de acuerdo con la ley y la jurisprudencia, no debemos considerar, ni menos resolver las cuestiones suscitadas por el apelante en su alegato.

"Se señala también como error," dice la Corte Suprema de California, "la negativa de la corte a eliminar la contestación enmendada y la contrademanda. No puede tomarse en consideración este señalamiento de error, por razón de que una orden *rehusando* eliminar una alegación no es una de aquellas órdenes o resoluciones que se consideran excepcionadas por la sección 647 del Código de Enjuiciamiento Civil, a menos que la misma sea dictada en ausencia de la parte peticionaria. Los autos no demuestran que el apelante tomara excepción de la resolución de la corte ni que estuviera ausente cuando la misma fué dictada. No se preparó pliego de excepciones que abarcara la acción de la corte a este respecto, sin lo cual la notificación, la moción para eliminar y la orden de la corte denegando tal moción, no podían formar parte del legajo de la sentencia de acuerdo con la

sección 670 del Código de Enjuiciamiento Civil.'' *Ganceart* v. *Henry,* 98 Cal. 281, 283.

Las secciones 647 y 670 del Código de Enjuiciamiento Civil de California a que se refiere la decisión de la Corte Suprema de dicho Estado que acabamos de citar, equivalen a los artículos 213 y 223 de nuestro código sobre la materia.

2. Entre otros la demandada presentó en el acto de la vista los siguientes documentos: *a,* escritura No. 354 de testamento otorgada por Apolinaria Diviñó, ante notario, en 1911; *b,* escritura No. 109 en combinación con la 386, ambas otorgadas ante notario, la primera en 1875 y la segunda en 1897, sobre venta de finca urbana; *c,* escritura No. 681 otorgada ante notario en 1865 sobre venta de finca rústica, y *d,* otra escritura aclaratoria de la anterior.

Tanto en la exposición del caso como en el pliego de excepciones el demandante se limitó a consignar con respecto a cada uno de los indicados documentos, que la demandada los presentó como prueba, que la corte los admitió y que el demandante tomó excepción. Y esto es, de acuerdo con la jurisprudencia, insuficiente. Copiamos del caso de *Falero et al.* v. *Falero,* 15 D. P. R. 124, lo que sigue:

"El Juez Asociado Sr. Swayne, en el caso de *Burton* v. *Driggs,* se expresa en los términos siguientes:

" 'Es regla de derecho que cuando una parte se opone a la admisión de algún testimonio está obligada a formular su objeción en términos precisos, y en un procedimiento por causa de error queda dicha parte limitada en la discusión de tal objeción a los propios términos en que la formulara.'

"Este principio ha merecido también consideración en el Estado de California, en donde el Juez Asociado Sr. Field, dice en el caso de *Killer* v. *Kimbal,* 10 Cal. 268.

" 'Para que una objeción pueda ser considerada no solamente debe ser sobre un punto sustancial, que afecte los derechos de las partes, sino que también el fundamento de la misma debe expresarse precisamente.'

"Y también en el caso de *Martin* v. *Travers,* 12 Cal. 245, el mismo juez hace las siguientes observaciones:

" 'Cuando una parte presenta objeción a la admisión de prueba durante el juicio, debe expresar el fundamento de su objeción al tiempo de formularla. Objeciones de carácter general no son suficientes. La parte debe señalar con su dedo, durante el juicio, el punto preciso contra el cual objeta; de otro modo este tribunal no podrá tomarla en consideración.' "

También presentó la parte demandada como prueba la escritura No. 309, otorgada en 1908, ante notario, por José Nicanor Pecunia, o sea el último testamento de éste en el cual hizo constar que había pagado a Doña Apolinaria Diviñó la deuda reconocida en sus anteriores testamentos, y la escritura No. 351, otorgada ante notario, en 1910, sobre partición de los bienes dejados a su fallecimiento por el dicho Pecunia.

Ningún fundamento se consigna en el pliego de excepciones, pero de la exposición del caso aparece con respecto a la escritura No. 309, que "el demandante se opone a la admisión de este documento porque es posterior a los hechos alegados en la demanda," y con respecto a la escritura No. 351, que "el demandante se opone a la admisión de ese documento, porque es del año 1910."

La corte no cometió error alguno. Ambos documentos guardaban estrecha relación con el acto cuya falsedad se alega por el demandante. Pecunia no solo reconoció por sus testamentos de 1892 y 1898 la deuda que tenía contraída con su hermana, si que también en su último testamento otorgado en 1908 se refirió a ella para consignar que la había satisfecho. La partición demuestra que se cumplieron las disposiciones del testador.

El mismo argumento de "posterioridad" empleó el demandante para oponerse a la declaración de Juan Ramón Martínez, administrador de los bienes de la demandada, que manifestó que ésta desde que los adquirió recibió sus productos, y a la presentación del libro en que constaban las cuentas de dicha administración, llevado por el testigo Carmelo Besosa, empleado del administrador Martínez.

Como puede verse, tampoco la corte cometió los errores que le atribuye el apelante. Si éste alegó que la venta de Pecunia a su hermana era simulada, no puede sostenerse que sea prueba impertinente demostrar que no solo se hizo constar la traslación de dominio en un documento, sino que de hecho se verificó, entrando la compradora a percibir los productos de los bienes adquiridos.

3. Hemos examinado toda la prueba practicada por ambas partes y a nuestro juicio la conclusión a que llegó finalmente la corte de distrito es correcta.

Desde 1892 reconoció Pecunia de modo solemne que debía a su hermana que con él vivía y trabajaba y continuó con él viviendo y trabajando hasta su muerte, la deuda de quince mil pesos que reconoció de nuevo, también en forma solémne, en 1898, que satisfizo diez años más tarde y a la que volvió a referirse en el testamento bajo el cual murió.

Al demandante incumbía probar la falsedad de tales actos. La declaración de Josefa González, mujer que entró al servicio de Pecunia y de su hermana Apolinaria para cuidar al demandante, pequeño niño nieto de Pecunia, huérfano de madre, que vivía en la casa de su abuelo, es sospechosa. También lo es la del padre del demandante. Ambas se refieren a ciertas admisiones hechas durante su vida por la Señora Diviñó, con respecto a su carencia de bienes de fortuna. Se comprende que el juez de distrito, que vió declarar a ambos testigos, no diera crédito a sus dichos.

Debe confirmarse la sentencia recurrida.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, Aldrey y Hutchison.