ANGEL CESTERO, demandante y apelado, *v.* SUCESIÓN INTESTADA DE EDUARDO CESTERO, compuesta de su esposa CONCEPCIÓN RAMÍREZ y sus hijos menores GEORGE, MARINA, PATRICK, CELIA CESTERO RAMÍREZ, demandada y apelante.

No. 3781.—*Visto:* Febrero 10, 1926. *Resuelto:* Julio 29, 1926.

1. TESTIGOS—COMPETENCIA—TESTIMONIO DE PARTES O PERSONAS INTERESADAS A FAVOR O EN CONTRA DE REPRESENTANTES, SUPERVIVIENTES O SUCESORES EN TÍTULO O INTERÉS DE PERSONAS FALLECIDAS O INCOMPETENTES—PRECEPTOS ESTATUTORIOS—INTERPRETACIÓN.—La inhabilidad de un testigo, según la sección 3 de la Ley de marzo 10, 1904 (Leyes de 1904, p. 121), no es absoluta; el estatuto mismo demuestra que es renunciable.

2. TESTIGOS—COMPETENCIA—CAPACIDAD Y CONDICIONES (QUALIFICATIONS) EN GENERAL—RENUNCIA A LA OBJECIÓN DE INCOMPETENCIA DEL TESTIGO Y EFECTO —PARTE QUE NO COMPARECE EN EL JUICIO.—Cuando una parte permanece pasiva y permite que se admita evidencia material y relevante, aunque tal evidencia pudiera resultar incompetente al presentarse la debida objeción, existe una renuncia y la cuestión de incompetencia no puede ser levantada en apelación. Asimismo, cuando en ausencia de una parte la corte admite prueba oral material y relevante que pudiera ser excluida mediante la debida objeción, la cuestión de incompetencia queda renunciada y la parte, no presente en el acto del juicio no puede derivar de ello ventaja alguna en apelación.

3. TESTIGOS—DEL EXAMEN O INTERROGATORIO—CONTRA-INTERROGATORIO Y RE-EXAMEN—REPREGUNTAS POR LA CORTE—CUANDO UNA PARTE NO COMPARECE EN JUICIO—EN GENERAL.—Cuando un testigo manifiesta que prestó a su hermano mil dollars, ello constituye la expresión de un hecho último (*ultimate fact*) y la corte, en su discreción, no está o viene obligada a repreguntar con el fin de poner a prueba la forma de pago o la credibilidad del testigo.

4. PAGOS—REQUISITOS Y SUFICIENCIA—PAGO EFECTUADO POR MEDIO DE CHEQUES. —EN GENERAL.—El artículo 1138 del Código Civil es más bien un precepto de derecho sustantivo que una regla de evidencia. Una deuda no queda pagada por la mera entrega de un cheque; si el cheque no es pagado la deuda continúa en todo su vigor. Dicho artículo, por sus términos, no hace necesario que un testigo exprese la forma de pago.

SENTENCIA de *Charles E. Foote,* J. (San Juan, Primer Distrito), declarando con lugar la demanda, con costas. *Modificada, y confirmada.*

*Rafael Rivera Zayas,* y *Juan B. Soto,* abogados de la apelante; *Acuña & Janer,* abogados del apelado.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

La demandada alega que la corte cometió error al admitir evidencia de una transacción con un finado en violación de la ley.

La demandada no compareció a la vista del caso y se permitió a Angel Cestero declarar que le había prestado $1,000 a su hermano Eduardo Cestero, quien ya había muerto.

En el caso de *Wilcox* v. *Axtmayer,* 23 D.P.R. 343, esta corte resolvió que la sección 3 de la Ley de 1904 no fué derogada por la Ley General de Evidencia aprobada en 1905. La sección 3 dice así:

"En las demandas por o en contra de los albaceas testamentarios, administradores o tutores en las cuales pueda dictarse sentencia a favor o en contra de ellos como tales, ninguna de las partes podrá declarar contra la otra en lo referente a transacciones con, o relaciones hechas por el testador, intestado o pupilo, a menos que fuere llamado a declarar por la parte contraria; y las prescripciones de esta sección se aplicarán a todas las demandas por o en contra de los herederos y representantes legales de un finado, que se suscitaren de transacciones habidas con éste."

Muchos de los Estados de la Unión Americana contienen disposiciones similares que han sido aplicadas estrictamente para limitar la exclusión de declaraciones. Esta corte ha citado el caso de *Wilcox* v. *Axtmayer* en *Freyre* v. *Sucesión de Sevillano,* 28 D.P.R. 396, y en *Saunmión* v. *Díaz,* 29 D. P.R. 615. En este último caso dijimos: "Y sostiene el apelante que de acuerdo con la ley, tal como fué interpretada por esta Corte Suprema en el caso de *Wilcox* v. *Axtmayer, et al.,* 23 D.P.R. 343, las declaraciones del demandante y del testigo Garau en cuanto se referían a las manifestaciones de Palés, que había ya muerto cuando la demanda se interpuso, eran inadmisibles como prueba.

"Hemos examinado las declaraciones del demandante y del testigo Garau y nada se objetó por la parte demandada cuando ellos se refirieron a las actuaciones y palabras del Sr. Palés en relación con el contrato de que se trata. La cuestión levantada se suscita por primera vez en esta corte de apelación."

El caso de *Wilcox* v. *Axtmayer* también fué citado en *García* v. *Santos*, 29 D.P.R. 880. En ninguno de estos casos se aplicó la doctrina sentada por el caso de *Wilcox* v. *Axtmayer,* por varias razones.

La apelante en su alegato dice:

"Y no se diga que el testimonio de Angel Cestero fué admitido porque la parte contraria no estuvo presente para hacer oposición; pues el testimonio de un testigo inhábil es nulo, sin necesidad de oposición por la parte contraria, ya que no se trata meramente de una cuestión de admisibilidad, sino de competencia para declarar, esto es, de la capacidad que tiene una persona para actuar como testigo."

[1, 2] La apelante está equivocada al suponer que la inhabilidad (*incompetency*) de un testigo según la sección 3 de la Ley de 1904 es absoluta. El estatuto mismo demuestra que puede ser fácilmente renunciado si el testigo es llamado por la parte contraria. Y las decisiones demuestran generalmente que puede renunciarse a esta clase de inhabilidad, al igual que a declaraciones de referencia, al estatuto de fraudes y a otras muchas causas de inhabilidad (*incompetency*).

El primer caso en esta jurisdicción que resolvió que evidencia inadmisible (*incompetent*) puede ser renunciada fué *Falero* v. *Falero*, 15 D.P.R. 118.

El caso de *El Pueblo* v. *Asencio,* 16 D.P.R. 355, resolvió en un caso criminal que declaraciones de referencia eran admisibles si no se objetaba a las mismas, citándose a *Falero* v. *Falero, supra.* De igual manera resolvimos en *El Pueblo* v. *Silva,* 17 D.P.R. 607. En el caso de *Surís* v. *Quiñones,* 17 D.P.R. 646, la objeción hecha fué que las firmas

en un documento privado eran falsas, pero como no se hizo ninguna otra objeción la corte admitió el documento.

En *Coto* v. *Rafas,* 18 D.P.R. 508, dijimos, citando el caso principal, que era un principio de derecho que cualquier testimonio probatorio sería considerado por la corte si no se hacía objeción alguna a su admisión. Igualmente dijimos en *El Pueblo* v. *De Jesús,* 18 D.P.R. 591. *Herederos de Martínez* v. *Fernández,* 19 D.P.R. 143, fué un caso en que se aplicó este principio en una cuestión de evidencia oral que tal vez hubiese sido inadmisible si se hubiera objetado. De igual manera se presentó evidencia oral en el caso de *Robles* v. *Robles,* 19 D.P.R. 438, y se citó el caso de *Falero* v. *Falero, supra. Rodríguez* v. *P. R. Railway, Light & P. Co.,* 19 D.P.R. 643, fué otro caso de supuesta declaración de referencia donde se citaron algunos de los casos anteriores.

*Príncipe* v. *American R. R. Co. of P. R.,* 22 D.P.R. 302, fué un caso en el cual la objeción que se hizo en apelación fué a la evidencia secundaria. *El Pueblo* v. *Alsina,* 22 D. P.R. 458, fué un caso en el cual resolvimos que no se podían levantar en apelación objeciones a la admisión de evidencia secundaria. En *Assise* v. *Curet,* 22 D.P.R. 555, se consideró renunciada la objeción a un certificado de nacimiento por prueba testifical, por no haberse levantado la cuestión en la corte inferior.

En *Maymón* v. *Victoria & Co.,* 25 D.P.R. 192, se dice en la página 195:

"En el acto de la vista no se presentó en efecto el documento otorgado, pero sí prueba oral de las condiciones del contrato, sin que la demandada hiciera objeción alguna a la práctica de dicha prueba, y sabido es que . . . .

"Es un principio de derecho que cualquier testimonio probatorio puede ser considerado por la corte, si no se presenta objeción alguna a la admisión del mismo. (Burton v. Driggs, 20 Wall 133; District of Columbia v. Woodbury, 136 U. S. 450; Patrick v. Graham, 132 U. S. 627; Camden v. Doremus, 3 How. 515.) Esta es una aplicación de la máxima *Consensus tollit errorem.*"

Este caso fué citado por el apelado.

El caso de *Ibáñez* v. *Diviñó*, 25 D.P.R. 302, es al efecto de que las objeciones deben presentarse debidamente y hace una larga cita de *Falero* v. *Falero, supra.* Manifestaciones similares pueden hallarse en *Alcaide* v. *Alcaide*, 25 D. P.R. 310; *Sucesión de Del Rosario* v. *Rosaly*, 27 D.P.R. 105; *El Pueblo* v. *Ríos*, 30 D.P.R. 114, y *El Pueblo* v. *Ruiz*, 31 D.P.R. 312.

Algunas expresiones equívocas pueden hallarse en algunos de los casos de California, pero en *Kinley* v. *Largent*, 187 Cal. 71, 200 Pac. 937, se dice, refiriéndose a la inhabilidad de un testigo por razón de haber tenido transacciones con el finado: "En algunos de los casos se usó lenguaje que podría indicar que la inhabilidad (*incompetency*) era absoluta." Así en *Rose* v. *Southern Trust Co.* 178 Cal. 580, 174 Pac. 28, se manifiesta que tal testigo no debe declarar, pero la corte demostró que en el último caso se hizò una objeción durante el juicio, no presentándose la cuestión de renuncia a la objeción, y se hizo una distinción del caso.

La jurisprudencia es casi uniforme en el sentido de que si una de las partes se sienta tranquilamente y permite que se introduzca ante la corte o el jurado evidencia de transacciones con un finado sin hacer objeción alguna, se da por renunciada la supuesta inhabilidad (*incompetency*). En 40 Cyc. 2349, notas 61 y 62, el texto dice: "Incumbe a la parte que desea aprovecharse de la inhabilidad (*incompetency*) de un testigo presentar una objeción por ese fundamento, en ausencia de la cual se presume que se renuncia a la objeción y se permite declarar al testigo."

*Secor* v. *Siver*, 161 N. W. 769, fué un caso en que se invocó un estatuto como el presente y la corte resolvió que una objeción de incompetencia debía hacerse específicamente y que una objeción a la evidencia no levantaba punto alguno de la inhabilidad (*incompetency*) del testigo para declarar y que si se presentaba alguna objeción por un fun-

damento que no se podía presentar objeción por otro fundamento en apelación. De igual modo, que una parte en el examen de repreguntas dentro de un campo no mencionado por el examen directo podía renunciar a la objeción. En *Bland* v. *Beasley*, 76 S. E. 50, se dijo que la objeción a la inhabilidad (*incompetency*) de un testigo debe ser específica, y en *Hathaway* v. *Cook*, 258 Ill. 92, la corte resolvió que la objeción no podía levantarse en apelación, especialmente cuando la mayor parte del testimonio fué dado en el examen de repreguntas.

Igualmente en *Haslam* v. *Perry*, 98 Atl. 812, la corte resolvió que si se hubiese objetado oportunamente el testimonio hubiera sido inadmisible. El caso de *Cook* v. *Lane*, 84 Atl. 864, resolvió que una objeción general al testimonio, renunciaba a la objeción sobre la capacidad (*competency*) del testigo y que la falta de presentar objeción a tal capacidad hacía que el testigo fuera hábil (*competent*) durante el juicio, aun en una vista posterior del caso.

*Farias* v. *Salas* (Texas), 244 S. W. 1115, sostiene que el apelante no hizo objeción a la declaración de la apelada respecto a transacciones y conversaciones que ella tuvo con Benavides, el finado, y por tanto que el testimonio debe considerarse admisible y legal. *Reynolds* v. *Reynolds* (Tex. Civ. App.) 224 S. W. 382.

*Hale* v. *Hale*, 224 S. W. 1078; *Harwood* v. *Hunt*, 191 N. W. 19; *In Re Wood's Estate, Appeal of Gregg*, 115 Atl. 865; todos estos casos resolvieron que puede renunciarse el privilegio si no se presenta objeción alguna.

Bajo el encabezamiento del Estatuto de Fraudes, 27 C. J. 373, se dice: "Y es demasiado tarde después del veredicto objetar que el contrato sobre el cual se demanda fué probado con prueba testifical, cuando el estatuto requiere que sea por escrito." El Estatuto de Fraudes es una regla de evidencia y puede ser renunciado por no presentarse objeción alguna. *Taplin* v. *Hinckley Fibre Co.* (Vt.) 122 Atl. 426; *De Proy* v. *Progakis*, (Tex.) 259 S. W. 620.

El mismo caso de *Wilcox* v. *Axtmayer, supra,* es una autoridad en el sentido de que la sección 3 de la Ley de 10 de marzo de 1904, es una regla de evidencia por ser *in pari materia* y el caso de *Saunnión* v. *Díaz, supra,* demuestra que puede renunciarse a la objeción.

El caso de *Hoag* v. *Wright,* 63 L.R.A. 163, dice:

"Interpuesta la objeción, sin embargo, no atacó la capacidad del testigo, sino la admisibilidad de la evidencia; es decir, la evidencia era admisible pero el testigo no estaba capacitado para declarar. Si bien no es necesario que se refiera específicamente a la sección del Código que hace inhábil a un testigo, es necesario levantar la cuestión en alguna forma que demuestre claramente la intención de objetar. Una objeción de que el testigo es inhábil o está interesado sería, tal vez, suficiente, pero la simple objeción de que la evidencia es inadmisible no es suficientemente específica para justificar una revocación. (Citas) En todos los casos a que se ha llamado nuestra atención en que la revocación se ha basado en la sección 829, las objeciones fueron tan completas y claras que necesariamente trajeron ante la mente de la corte y del abogado de la parte contraria el fundamento específico sobre el cual se basaba la objeción. Una práctica razonable lo requiere así, a fin de que la corte pueda fallar inteligentemente, y para que el abogado esté advertido del riesgo que está corriendo y obre de conformidad. (Citas.)"

El hecho principal que distingue el presente caso del volumen de jurisprudencia de que las objeciones deben presentarse en la corte inferior es que el demandado no estaba presente durante el juicio. Hasta ahora no hemos podido hallar ningún caso que trate la cuestión de evidencia inadmisible (*incompetent*) aceptada en ausencia de una parte que hubiera tenido el derecho de oponerse si hubiese estado presente. Sin embargo, parecería lógico y una cuestión *a fortiori* que si un demandado deja de comparecer a un juicio renuncia a cualquier derecho a objetar a evidencia inadmisible (*incompetent*). Hay muchos casos que han resuelto que el oponerse a la admisión de testimonio por ser inadmisible (*incompetent*) por referirse a una transacción o conversación con un finado, no puede levantarse por pri-

mera vez en apelación. *R. Herman Sawmill Co.* v. *Bailey,* 58 S. W. 449; *McElroy et al.* v. *Barkley,* 58 S. W. 406; *Brown* v. *Johnson,* 77 N. W. 900, y muchos más. De lo contrario, es evidente que ausentándose del juicio una de las partes podría obtener ciertas ventajas.

En 3 C. J. 689, se dice: ''Con ciertas excepciones, que serán mencionadas más adelante, la regla es casi de aplicación universal que cuestiones de la naturaleza que sea no levantadas ni presentadas debidamente para su revisión en una corte sentenciadora no serán examinadas en apelación.'' Las excepciones a que se hace referencia no afectan el asunto que tenemos a la vista.

En su alegato la apelante hace mención de que por inadvertencia del abogado de ella, éste no se dió cuenta de que el caso sería llamado para juicio. No obstante, los autos no demuestran que se presentó moción alguna a la corte inferior para abrir otro juicio a fin de darle a los demandados una oportunidad para ser oídos. Si se presentara tal moción a la discreción de la corte, la parte que la presenta debería radicar un affidavit de méritos, haciendo constar a nombre de los herederos que ellos creían que la reclamación del demandante era poco equitativa o poco razonable. En otras palabras, que a fin de aprovecharse del tecnicismo del estatuto el demandado debe demostrar que tiene una defensa meritoria, una vez que ha permitido que se dicte sentencia contra él por su propia falta de comparecencia.

Nuestra resolución principal en este caso es que no compareciendo en el juicio la demandada renunció a cualquier cuestión de inadmisibilidad (*incompetency*) y que el demandante tenía derecho a presentar cualquier prueba que fuera material y pertinente.

[3] Durante la vista de un caso en que el demandado no comparece la corte tiene amplia discreción, y se presume que siempre la ejerce en forma tal que queda convencida de que el demandante tiene una buena causa de acción. Si el juez le cree a un testigo cuando éste dice: ''Le presté a

mi hermano $1,000," no está obligado a repreguntar a tal testigo para averiguar la fecha, forma y modo en que se hizo el préstamo. En cualquier juicio, estando presentes abogados competentes, se permite que se introduzca mucha prueba enteramente inadmisible, porque los abogados saben que si se hace alguna objeción se presentaría la prueba debida. Entonces el presentar alguna objeción equivaldría únicamente a tomarle el tiempo a la corte. En ausencia del abogado del demandado la corte no está obligada a ser demasiado exigente y puede admitir aun evidencia inadmisible (*incompetent*) si está satisfecha de que es un verdadero reflejo de los hechos del caso.

Una vez concedido que se puede admitir evidencia inadmisible si no se presenta objeción alguna, el demandante ha probado su caso con su sola declaración. El demandante dijo: ''Le presté a mi hermano $1,000,'' y además que el dinero prestado nunca le había sido pagado. En general, el decir un hombre que le prestó a otro $1,000, equivale a decir el hecho último. Esta manifestación, exceptuando la inadmisibilidad que hemos estado discutiendo, no es objetable en ningún sentido. Después de declarar acerca del préstamo, el demandante pudo terminar ahí su prueba.

Él no lo hizo así. Presentó otro testigo que no estaba incapacitado para declarar sobre transacciones con el finado y declaró que el demandante le había entregado $1,000 para que él a su vez se los entregara a Eduardo Cestero; que él los había depositado y que le había entregado el dinero a Eduardo Cestero por medio de un cheque contra el Banco Comercial de Bayamón; que no tenía el cheque porque se había mudado de Bayamón, donde vivía entonces, a Río Grande.

La corte oyó esta declaración y evidentemente estuvo completamente satisfecha de que Eduardo Cestero recibió los $1,000.

[4] Se han suscitado dudas respecto a si se ha probado

la entrega del dinero. Se ha invocado el artículo 1138 del Código Civil que es como sigue:

"Art. 1138.—El pago de las deudas de dinero deberá hacerse en la especie pactada, y no siendo posible entregar la especie, en la moneda de plata u oro que tenga curso legal en Puerto Rico.

"La entrega de pagarés a la orden, o letras de cambio u otros documentos mercantiles, sólo producirá los efectos del pago cuando hubiesen sido realizados, o cuando por culpa del acreedor se hubiesen perjudicado.

"Entretanto la acción derivada de la obligación primitiva quedará en suspenso."

No nos parece que este artículo es tanto una regla de evidencia como de derecho substantivo. ¿Queda una deuda pagada por la mera entrega de un pagaré o de un cheque? Lo que ha sido una cuestión a discutir en las cortes de los Estados Unidos ha sido resuelta definitivamente por el Código. Con la mera entrega de un cheque no queda pagada una deuda. No obstante, sostenemos que la entrega de un cheque, si no se hace la debida objeción, es prueba *prima facie,* no sólo de un préstamo sino también de pago.

El inciso 13 del artículo 102 de la Ley de Evidencia tiene algún valor, espiritualmente si no literalmente, y dice así:

"Art. 102.—Todas las demás presunciones serán satisfactorias, si no fueren contradichas. Se denominan presunciones disputables y pueden controvertirse mediante otra evidencia. Corresponden a esta clase las siguientes:

*     *     *     *     *     *     *

"13. Que una persona en cuyo poder obrare una orden a su cargo para el pago de dinero, o mandándole entregar una cosa, ha pagado el dinero o entregado la cosa de conformidad."

La prueba no daba lugar a dudas de que Angel Cestero había entregado $1,000 a Rafael Ramírez para que éste a su vez los entregara a Eduardo Cestero. Rafael Ramírez en efecto había recibido y aceptado una orden de pagar a

Eduardo Cestero $1,000. Entonces surgió la presunción de que había cumplido su obligación. La forma en que lo hizo no tenía importancia.

En este caso, sin embargo, no se trata del cumplimiento o pago de una obligación. Si se invocan tecnicismos, entonces no es aplicable el artículo 1138. Aquí no se trata de un deudor que alega el cumplimiento de una obligación pre-existente. Hablando técnicamente no se trató de efectuar ningún pago. No hay nada en el código que impida que surja la presunción, según el curso ordinario de los negocios en todo el mundo, que un cheque ha sido aceptado (*honored*). El inciso 20 del artículo 102 de la Ley de Evidencia dispone lo siguiente:

"20.—Que se ha seguido el curso ordinario de los negocios."

La corte inferior por toda la prueba presentada tenía derecho a estar enteramente satisfecha de que Angel Cestero prestó a Eduardo Cestero $1,000. Sin embargo, durante el juicio Angel Cestero dijo que prestó el dinero sin intereses, lo que parece natural. Por tanto, la sentencia debe ser modificada en el sentido que diga "con intereses a partir de la fecha de la interposición de la demanda," y así *modificada debe ser confirmada.*

Los jueces Presidente señor del Toro y Asociado señor Franco Soto, disintieron.

OPINIÓN DISIDENTE DEL JUEZ PRESIDENTE SR. DEL TORO.

Estoy conforme en que puede admitirse prueba de transacciones con un difunto no obstante la prohibición establecida por la ley, si no se presenta la debida objeción, y me inclino a creer que esa regla puede aplicarse cuando el demandado deja de comparecer al juicio. La razón de mi disentimiento descansa en que a mi juicio no se probó cumplidamente la entrega del dinero de acuerdo con el artículo 1138 del Código Civil que considero aplicable a este caso. Por eso estimo que la resolución más apropiada y justa para

ambas partes es la de revocar la sentencia y ordenar la celebración de un nuevo juicio.

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SR. FRANCO SOTO.

En la demanda se alega que en diciembre de 1920 el demandante hizo un préstamo a Eduardo Cestero, causante de los demandados, por $1,000 para ser devuelto al año siguiente con intereses al tipo del 9 por ciento anual. Se alegó el fallecimiento de Eduardo Cestero sin haber satisfecho la deuda y, en virtud de dirigirse la acción contra sus herederos, se suscita por los apelantes la inhabilidad del demandante Angel Cestero por haber declarado como testigo en el caso, invocándose para ello la sección 3 de la Ley de 10 de marzo de 1904, (página 121), que prescribe que ninguna de las partes podrá declarar contra la otra en lo referente a transacciones con, o relaciones hechas por el testador, intestado o pupilo, a menos que fuere llamado a declarar por la otra parte, disponiendo asimismo que tales prescripciones se aplicarán a todas las demandas por o en contra de los herederos y representantes legales de un finado, que se suscitasen de transacciones habidas con éste.

El juicio se celebró sin la asistencia de los apelantes y Angel Cestero fué llamado a declarar en su propio beneficio y sustancialmente dijo lo siguiente: que en 1921 prestó a su hermano Eduardo Cestero $1,000 sin interés para devolverlos tan pronto vendiera unas fincas en Bayamón; que dió el dinero por conducto de su amigo íntimo Rafael Ramírez y éste hizo la entrega mediante un cheque; que Eduardo Cestero tenía una finca en Pueblo Viejo y le decía que tan pronto la vendiera le pagaría y que la vendió y no le pagó. Y el testigo Rafael Ramírez refiere que en 1921 recibió de Angel Cestero $1,000 para entregar a su hermano Eduardo; que depositó el dinero en el Banco Comercial y que dió un cheque a Eduardo Cestero por dicha suma.

Demás parece que digamos que habiéndose dicho por

el demandante que el préstamo lo hizo por conducto de un tercero y mediante un cheque, no es necesario que examinemos la suficiencia de su declaración a la luz del precepto invocado por los apelantes y que establece la inhabilidad de una parte para declarar contra la otra en lo referente a transacciones con, o relaciones hechas por el difunto, sino aquilatar sus efectos de acuerdo con los principios generales de evidencia, ya que en otro de los errores alegados se sostiene la insuficiencia de la prueba.

Es cierto que habiéndose celebrado el juicio en ausencia de los apelantes no hubo objeción a la prueba así practicada, pero no se trata, además, de una prueba de referencia y sí de prueba legalmente insuficiente sin que la ausencia de los demandados en el juicio o la omisión de haber sido objetada la haga suficiente o cure su ilegalidad.

"No resulta necesariamente por ello que la omisión de objetar a un testimonio es una admisión de que es competente. Cuando la prueba es contraria a la ley, el silencio de la parte opositora no cura su ilegalidad, y la corte está obligada, *mero motu*, a tratarla como sin validez. Además, la corte puede propiamente excluir tal prueba sin haberse hecho objeción alguna; y la resolución de la corte sentenciadora, excluyendo el testimonio, será sostenida si su presentación fué impropia, aunque el abogado no exponga las razones correctas para la objeción, siempre que tales razones, si fueren expuestas, no hubieran podido ser obviadas." (10 Cal. Jur. 822).

Como la entrega del dinero se hace depender del libramiento de un cheque y es uno de los documentos a que se refiere el artículo 1138 del Código Civil, que sólo produce efecto cuando se hubiese realizado o pagado, la declaración del testigo tenía un aspecto legal en ese punto y parecía más natural que se hubiera producido el cheque mismo, pues necesariamente tenía que volver a manos de Ramírez una vez satisfecho por el banco. El testigo dijo solamente que no tenía el cheque porque él vivía en esa época en Bayamón y después se fué a Río Grande. No hubo nada explícito en sentido de que el documento se hubiera perdido

o destruído para entonces dar o nó crédito a sus demás manifestaciones. La evidencia tiene sus reglas y uno de sus efectos cuando no se cumple con ellas, se prevé por el artículo 162 de la Ley de Evidencia, diciendo:

"En los casos civiles la afirmativa en una cuestión deberá probarse, y cuando la evidencia fuere contradictoria, la decisión deberá pronunciarse de acuerdo con la preponderancia de pruebas.

"La evidencia deberá estimarse no sólo por su valor intrínseco, sino también con arreglo a la prueba que una parte estuviere en aptitud de presentar, y la otra de contradecir; y por tanto si se ofreciere evidencia más débil y menos satisfactoria, cuando pareciere que la parte estaba en aptitud de ofrecerla más firme y satisfactoria, la evidencia ofrecida deberá mirarse con sospecha."

La falta de la producción del cheque en este caso debió considerarse fatal para el demandante. La mejor evidencia aparece suprimida sin una excusa legal de no haberse presentado. "La regla que requiere la presentación de la mejor evidencia de que es susceptible el caso por su naturaleza, es adoptada para evitar el fraude, y se declara que es esencial para la buena administración de justicia * * * Exigiendo la presentación de la mejor evidencia, la ley niega la admisibilidad de aquella prueba que por su naturaleza es meramente un substituto, cuando la evidencia original no puede ser hallada." *Anglo-American Packing, etc., Co. v. Cannon,* 31 Fed. 313, 314.

"En los libros se dice que la razón de la regla es la sospecha de fraude, y si hay mejor evidencia del hecho que se retiene sin presentarse, surge la presunción de que la parte tiene algún motivo secreto o siniestro para no presentarla. Las reglas de evidencia se adoptan con fines prácticos en la administración de justicia, y deben ser aplicadas para conseguir los fines para que son designadas." *U. S. v. Reyburn,* 6 Pet. (U. S.) 352, 367, 8 L. Ed. 424.

Yo creo que sería subversiva a los fines de la justicia que se estableciera como regla que en ausencia del abogado de un demandado las cortes tengan demasiada lenidad en la admisión de prueba inadmisible. No he encontrado nin-

guna autoridad en tal sentido, ni pienso que pueda encontrarse. La Corte Suprema de California, por el contrario, en el caso de *McGuire* v. *Drew*, 83 Cal. 225, sienta como regla más sana y saludable, la siguiente: "Es el deber de la corte sentenciadora, cuando solamente una parte está representada, insistir en que se presente la mejor evidencia obtenible."

Insisto en que si el demandante no se concretó a decir que le prestó a su hermano $1,000 y que tal suma no le había sido devuelta sino que explicó además que se valió de un tercero y éste expidió un cheque para la entrega del dinero, ninguna de las manifestaciones envuelven la significación de "hechos últimos." No deben confundirse éstos con los elementos mismos de evidencia para establecer o refutar los hechos en controversia. Los "hechos últimos" los define Bouvier's Law Dictionary, Vol. 2, pág. 1152, así: "Hechos en controversia en oposición a hechos probatorios o evidenciales, siendo estos últimos aquellos que sirven para establecer o refutar los hechos en controversia."

Un cheque, por su faz, es una mera orden a otra para que pague dinero y aunque por sus términos no decide la cuestión de si el dinero era para pagar una deuda o era un préstamo, de cualquier modo envuelve la entrega de dinero. Si a los efectos del pago de una deuda la entrega de un cheque es condicional a dicho pago, mientras no se realiza o se hace efectivo, lo mismo ocurre cuando se trata de un préstamo. La entrega del dinero queda en *issue* o el préstamo no queda consumado mientras el deudor no lo cobre. Y esto es lo que no se ha probado en este caso. Considero una sutileza decir que técnicamente el artículo 1138 no sería aplicable a la entrega de un cheque dado para una operación de préstamo, y sí únicamente a la extinción de obligaciones por el pago. Existiendo la misma razón, debe haber igual disposición de la ley.

Por todo lo expuesto, la sentencia apelada debió revocarse y declararse sin lugar la demanda.