REYNOLDS et al. v. REYNOLDS.
(No. 1680.)

(Court of Civil Appeals of Texas. Amarillo. June 30, 1920.)

1. Executors and administrators ⬁450—Evidence held not to show intestate's use of proceeds of cattle sold by son.

In an administrator's action against intestate's son to recover proceeds of intestate's cattle sold by son while living with intestate and cultivating her farm, evidence *held* not to show that proceeds were used by intestate during her lifetime.

2. Evidence ⬁69—Presumption that agent performed duty not applicable, where agent acted individually.

There is a presumption of good faith and performance of duty on the part of an agent, but such presumptions do not obtain where it is shown that the agent acted as an individual, and not in his fiduciary capacity.

⬁For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. Executors and administrators ☞59—Evidence held to show intestate owned cattle sold by son.**

In an action by a mother's administrator against a son to recover proceeds, cattle sold by the son while he was living with his mother and cultivating her farm, where it was undisputed that she had had 72 cattle, evidence *held* sufficient to identify the cattle sold as cattle belonging to the mother, though the inventory made evidence by Vernon's Sayles' Ann. Civ. St. 1914, art. 3348, showed only 19 cattle.

**4. Evidence ☞472(6)—Opinion as to ownership of property incompetent where matter is in issue.**

In action involving issue as to ownership of property, it was incompetent for witness to state his opinion as to ownership thereof.

**5. Witnesses ☞178(3)—Incompetency of defendant's testimony as to transaction with intestate waived by cross-examination.**

In an administrator's action, the administrator, by cross-examining defendant as to transactions with intestate, waived the incompetency of such testimony under Vernon's Sayles' Ann. Civ. St. 1914, art. 3690.

**6. Animals ☞20—Offspring belongs to owner.**

Cattle raised by son living with mother and cultivating mother's farm belonged to mother, and not to son, where they were the increase of mother's cattle.

**7. Witnesses ☞159(7)—In administrator's action for conversion, testimony that intestate gave defendants property incompetent.**

In action by mother's administrator against decedent's sons to recover property converted by them, their testimony that mother had given them such property was incompetent as testimony of transaction with deceased (Vernon's Sayles' Ann. Civ. St. 1914, art. 3690).

**8. Costs ☞42(1)—Properly taxed against defendant, who did not tender amount of judgment in answer.**

Where amount of judgment was not tendered by answer, it was not error for court to tax costs against defendant, even though record showed that defendant was ready at all times to pay such amount; the filing of the suit being a sufficient demand therefor.

**9. Executors and administrators ☞59—Intestate in possession presumptive owner of personal property.**

It will be presumed that personal property in intestate's possession and on her premises at time of her death belonged to her.

Appeal from District Court, Collingsworth County; J. A. Nabers, Judge.

Suit by J. E. Reynolds, as administrator, against L. M. Reynolds and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Templeton & Templeton and C. C. Small, all of Wellington, for appellants.

W. T. Barton and Cocke & Gribble, all of Wellington, for appellee.

HALL, J. Appellee, as administrator of the estate of his mother, sued his brothers, J. R. Reynolds, L. M. Reynolds, W. E. Reynolds, and Alfred Reynolds, to recover certain money alleged to be due the estate and for the recovery of certain personal property of the estate, alleged to have been converted by defendants and not included in the inventory and appraisement. There was a trial before the court without a jury, resulting in a judgment in favor of the administrator against J. R. Reynolds, for $1,210, L. M. Reynolds, for $600, and against J. R. Reynolds, as guardian of W. E. Reynolds, a minor, for the recovery of two horses, a wagon, and some harness and against each of the defendants for the return of certain personal property. The judgment further ordered the defendants to return into court an inventory of all personal property in their possession belonging to the estate.

[1] It is insisted under the first two assignments that the court erred in rendering judgment against J. R. Reynolds for $1,210, because the evidence shows that all the property belonging to the estate of his mother, which was sold and disposed of by J. R. Reynolds before the death of his mother, was so disposed of with her knowledge and consent, and the proceeds used by her during her lifetime. The record does not sustain these assignments. It appears from the statement of facts that at the time of the death of the father of plaintiff and defendants, J. R. Reynolds was 21 years of age and unmarried; that E. A. Reynolds was a minor. The remaining children, having previously married, were living separate and apart from their parents; that J. R. Reynolds and E. A. Reynolds continued to live with their mother until her death, cultivating the farm, looking after the stock, and that J. R. Reynolds attended to the greater part of his mother's business affairs. The $1,210 judgment against J. R. Reynolds represents the proceeds of 43 cattle, which belonged to his mother, being part of the community estate of herself and husband, who predeceased her about 2 years. The evidence shows that J. R. Reynolds sold the 43 cattle to one E. W. Bennett, taking Bennett's checks in payment therefor. The checks were introduced in evidence, drawn on the First State Bank of Dodsonville, Tex., and made payable to J. R. Reynolds or order. Both checks were indorsed J. R. Reynolds. The printed bank indorsements on them show that one of the checks was deposited in the City State Bank of Wellington, Tex., and the other in the First National bank of Wellington, Tex. J. R. Reynolds testified: "I indorsed both checks, and received the money on them." He further testified that he paid out all of the money received for improvements made on his mother's place and for feed for her

live stock. There is a dearth of evidence in the record relating to all the transactions, and no receipts and no receipted bills or accounts were ever produced by J. R. Reynolds, nor did he undertake to state, in writing or otherwise, when and from whom he purchased feed or make a detailed statement of the improvements made on the place.

It is held in the case of Swan et al. v. Price (Tex. Civ. App.) 162 S. W. 995, that there is a presumption that an agent, duly authorized to collect money for his principal, has done his duty and delivered the money. But there is no evidence in the instant case to show that in selling the cattle he acted as the agent of his mother, or that the money was deposited to his mother's account in either bank. He testified that his account with the bank was separate from that of his mother. No bank books were exhibited to show to whose credit he made either of the deposits. The purchaser of the cattle, Bennett, says he bought them from J. R. Reynolds, and, as far as he knew, the cattle belonged to J. R. Reynolds.

[2] There is, of course, a presumption of good faith and performance of duty on the part of an agent, but these presumptions do not obtain where it is shown that the agent acted as an individual, and not in his fiduciary capacity. The only evidence tending to show that the proceeds of the cattle were expended for feed and improvements is his own testimony, and the court evidently did not believe his statement.

[3] We think the evidence sufficiently identified the cattle. It is provided by article 3348, V. S. C. S., that the inventory of an estate may be given in evidence in any suit by or against an administrator. The article further provides that it shall not be conclusive for or against him if it be shown that there is other property belonging to the estate not inventoried, or that certain property or claims named in the list did not belong to the estate. The inventory and appraisement of the estate of T. J. Reynolds shows more than 150 cattle. The evidence is undisputed that 72 of this number were set apart to Mrs. E. A. Reynolds, and there is no evidence which negatives the presumption that the cattle purchased by Bennett were part of the original number belonging to the mother, Mrs. E. A. Reynolds, although the inventory of her estate shows only 19 cattle. What is here said disposes of the first five assignments.

The sixth assignment is that the court erred in rendering judgment against W. E. Reynolds and his guardian J. R. Reynolds for two horses, one wagon, harness, one feather bed, two quilts, and numerous family relics. There was no exception to the pleadings of the appellee for failure to specifically describe the property sued for, and no denial appears in the record that any of the property mentioned in the judgment was not the identical property in the possession of Mrs. Reynolds at the time of her death. J. R. Reynolds testified that the two horses, wagon, and harness were delivered to his mother when the father's estate was settled and partitioned. The same contention is made under the seventh, eighth, tenth, and eleventh assignments, and, for the reasons stated, they are overruled.

Under the twelfth assignment it is insisted that the court erred in excluding the testimony of J. R. Reynolds to the effect that the cattle sold by him to Bennett were his property, that he knew who was the owner of the cattle, and that he owned them himself.

By the thirteenth assignment it is insisted that the court erred in excluding the testimony of J. R. Reynolds, to the effect that he knew who owned the two horses, wagon, and harness; that they were given by his mother to W. E. Reynolds at the time of the partition of their father's estate. It is provided by V. S. C. S., art. 3690, that—

"In actions by or against * * * administrators * * * in which judgment may be rendered for or against them as such, neither party should be allowed to testify against the others as to any transaction with, or statement by, the testator, [or] intestate, * * * unless called to testify thereto by the opposite party; and the provisions of this article extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

[4-6] The issue raised by these two assignments is that the court did not permit J. R. Reynolds to testify who owned the cattle sold Bennett, and the horses, wagon, and harness, which the minor son, W. E. Reynolds, claimed. The question of the right of a witness to state his opinion as to the ownership of property has been variously decided by the Courts of Civil Appeals but in the case of Magee v. Paul, 221 S. W. 254, the Supreme Court seems to have settled the question against appellant's contention, and, following the decision in that case, we hold that the court did not err in excluding this testimony. It was not admissible, since the answer of the witness might have involved the statement of a conclusion of law and for the further reason that it was the very question at issue which the court was required to decide. If the cattle had been given to J. R. Reynolds by his father, this was a fact subject to proof, and J. R. Reynolds was given an opportunity several times to state the fact. Reference to the record shows that he was questioned by plaintiff's counsel in such a way that the rule declared by the above-quoted statute had been waived. Counsel for plaintiff read the allegation in his answer, claiming them as a gift from his mother, and examined him at some length with reference to statements made by his mother, with reference to checking on her account and his threat to leave her, but his answers to the questions pro-

pounded him during such cross-examination were evasive and very unsatisfactory. He did testify that the mule with which his brother, L. M. Reynolds, paid in part for the 29 head of cattle bought by the latter from the estate had been given him by his mother, and that it had been in his possession ever since. The court did not file any findings of fact, and the only inference is that the trial judge did not believe his testimony upon these issues, and from the manner of testifying was warranted in not believing it. He testified that he raised some of the calves he sold to Bennett. The court correctly ruled that if the calves which he claimed to have raised were the increase of the mother's cattle, his statement could not be accepted as his proof of ownership in him. He stated that his father gave him some cattle, but could give no clear account of how many nor when they were given him, and the only animal which he was able to state definitely that he purchased from any one was a certain bull bought from a man named Harris. It seems that this animal and four other cattle were conceded to be his property. These assignments, therefore, present no error.

[7] Under the fifteenth assignment it is insisted that the court erred in refusing to permit him to testify that he raised some of the calves which he sold to Bennett. As before stated, and as shown by the statement of facts, he was permitted to testify to this fact. His offer to testify that the horses, wagon, and harness were the property of the minor, W. E. Bennett, would have violated the rule announced by the court in the Magee v. Paul Case, supra. If the court had permitted either J. R. or W. E. Reynolds to testify that their mother had given this property to W. E. Reynolds, it would have been contrary to the above-quoted statute.

[8] By the ninth assignment it is insisted that the court erred in taxing the costs against L. M. Reynolds, because the record shows that he was ready at all times to pay the $600. The filing of the suit was a sufficient demand for this money, and the amount was not tendered by the answer of L. M. Reynolds. This being the state of the record, we cannot say that the court erred in taxing the costs of this item against him.

[9] Complaint is also made of the judgment against Alfred Reynolds, for the recovery of certain personal property which the testimony shows he had taken from his mother's home after her death, at the time certain of the heirs divided the personal effects found there. All of this property at the time of Mrs. Reynolds' death was in her possession and on her premises, and was presumptively her property. No effort was made by Alfred Reynolds to prove that the scraper had been purchased and paid for by him, but appellants content themselves with insisting that appel-

lee did not prove that Alfred had not purchased and paid for it himself.

From a review of the whole case we think a correct judgment has been rendered, and it is affirmed.