WILCOX, DEMANDANTE Y APELANTE, *v.* AXTMAYER ET AL., DEMANDADOS Y APELADOS.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección 1ª., en causa sobre cobro de servicios profesionales.

No. 1309.—Resuelto en enero 10, 1916.

TESTIGOS HÁBILES—DEROGACIÓN DE LEYES—LEY DE EVIDENCIA.—La sección 3 de la ley prescribiendo quiénes son testigos hábiles y derogando el artículo 1215

del Código Civil y demás leyes, órdenes y decretos que se opusieren a la misma, aprobada en 10 de marzo de 1904 (Leyes 1904, p. 121), no ha sido derogada expresamente por la Ley de Evidencia de 9 de marzo de 1905 (Leyes 1905, p. 86–143), ni está en conflicto con ella.

Id.—DECLARACIÓN DE UNA PARTE EN PLEITO CONTRA LOS HEREDEROS O REPRESENTANTES DE UN FINADO.—En la actualidad en Puerto Rico una parte en un pleito instituido contra los herederos o representantes legales de un finado por virtud de transacciones habidas con éste, no puede declarar como testigo, sin antes ser llamado por la parte contraria.

SERVICIOS PROFESIONALES—EXAMEN DE LAS PRUEBAS.—Examinada la prueba en este caso, *se resolvió:* que no existe justificación alguna para concluir que al apreciarla en la forma en que lo hizo, la corte sentenciadora cometiera el error manifiesto que le atribuye el apelante.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Henry .G. Molina.*

Abogado de los apelados: *Sr. Jacinto Texidor.*

EL JUEZ ASOCIADO SR. DEL TORO emitió la opinión del tribunal.

El presente es un pleito sobre cobro de $1,500 por servicios profesionales. La demanda se interpuso contra Henry Axtmayer, Ana Axtmayer y la Sucesión de Jacob Axtmayer, compuesta de Ana, Henry, Rosa, Joseph, Simón y Charles Axtmayer, y fué declarada con lugar únicamente en cuanto a Henry Axtmayer por la suma de $800.

Es un hecho aceptado que el demandante, un abogado que ejerce su profesión en esta Isla, prestó sus servicios a Henry Axtmayer en la apelación de cierto pleito de divorcio y en varios incidentes surgidos con motivo de la custodia de uno de sus hijos. La obligación de pagar tales servicios por parte de Henry Axtmayer es evidente y no se discutió en esta apelación. Pero el apelante alegó en su demanda que los padres de Henry Axtmayer se obligaron a pagar los honorarios y sostiene ahora que la evidencia que presentó en el juicio para probar su alegación fué suficiente y que al no estimarlo así la corte sentenciadora erró y su sentencia debe ser en tal virtud revocada por este Tribunal Supremo.

El señalamiento de errores se hizo por el apelante en su alegato así: "1º. La corte sentenciadora cometió error al excluir la declaración del demandante en cuanto al convenio

que él había hecho con el Sr. Jacob Axtmayer. 2° La corte cometió manifiesto error en la apreciación de la prueba, en cuanto al convenio verbal entre el demandante y Jacob Axtmayer.''

1. Examinemos el primer error. A los efectos de demostrar que Jacob Axtmayer se había obligado a pagar al demandante los servicios prestados por éste a Henry Axtmayer, entre otras pruebas presentó el demandante su propia declaración. Analizándola, el juez sentenciador, en su opinión, se expresa así:

"En su declaración, el demandante nos dice que Jacob Axtmayer fué la única persona que habló con él con respecto al pago de sus honorarios, comprometiéndose a satisfacerlos entre él y su esposa Ana Axtmayer. Según la ley para prescribir quiénes son testigos hábiles y para derogar el artículo 1215 del Código Civil y demás leyes, órdenes y decretos que se opongan a la misma, aprobada en 1904, en las demandas por o en contra de los albaceas testamentarios, administradores o tutores, o herederos y representantes legales de un finado, en las cuales pueda dictarse sentencia a favor o en contra de ellos como tales, ninguna de las partes podrá declarar contra la otra en lo referente a transacciones con, o relaciones hechas por el testador, intestado o pupilo, a menos que fuera llamado a declarar por la parte contraria. Los preceptos de esta ley continúan, a juicio nuestro, en vigor, después de la implantación de la Ley de Evidencia, porque no están en conflicto con ella. De modo que la declaración del Sr. Wilcox con respecto a las manifestaciones que Jacob Axtmayer le hiciera, según dicho señor declara, no pueden tener peso alguno ante un Tribunal de derecho."

La cuestión a resolver es, pues, la de si en la actualidad en Puerto Rico una parte en un pleito que se suscite contra los herederos o representantes legales de un finado por virtud de transacciones habidas con éste, puede declarar como testigo, sin ser llamada por la parte contraria.

El Código Civil antiguo en su artículo 1247 disponía que eran inhábiles para declarar como testigos, entre otros, los que tienen interés directo en el pleito. Tal disposición fué preservada en el Código Civil revisado de 1902 en su

artículo 1215. En 1904 la Legislatura Portorriqueña pasó una ley para prescribir quiénes eran testigos hábiles y para derogar el artículo 1215 del Código Civil y demás leyes, órdenes y decretos que se opusieren a la misma. Por la sección 1ª. de dicha ley se decretó que ninguna persona estaría inhabilitada para declarar por motivo de ser parte en el juicio o procedimiento, ser pariente de alguna de las partes, o por estar interesada en tal juicio o procedimiento, y por su sección 3ª., se dispuso lo que sigue:

"En las demandas por o en contra de los albaceas testamentarios, administradores o tutores, en las cuales pueda dictarse sentencia a favor o en contra de ellos como tales, ninguna de las partes podrá declarar contra la otra en lo referente a transacciones con, o relaciones hechas por el testador, intestado o pupilo, a menos que fuere llamado a declarar por la parte contraria; y las prescripciones de esta sección se aplicarán a todas las demandas por o en contra de los herederos y representantes legales de un finado, que se suscitaren de transacciones habidas con éste."

Así las cosas, la Asamblea Legislativa de Puerto Rico, en 1905, adoptó una ley general de evidencia, similar a la que rige en California. La sección 38 de dicha ley, igual a la 1879 del Código de Enjuiciamiento Civil de California, es como sigue:

"Todas las personas, sin excepción, fuera de lo especificado en los dos artículos siguientes, que hallándose en posesión de sus sentidos, pueden percibir y, percibiendo, comunicar sus percepciones a otras personas, son aptas para testigos. Así, pues, ninguna de las partes, ni otras personas, interesadas en el resultado de la acción o procedimiento, serán excluídas; ni las que hubieren sido convictas de delito grave; como tampoco se excluirá a persona alguna por razón de sus opiniones en lo referente a creencias religiosas; si bien en cada caso, la credibilidad de los testigos podrá ponerse en duda, conforme lo dispuesto en el artículo veintiuno."

La sección 39 difiere de la 1880 del Código de Enjuiciamiento Civil de California, en que no incluye dos de los casos de inhabilidad que aparecen en el Código californiano.

La sección 40 de la ley de Puerto Rico es igual a la 1881 de la ley de California.

Dentro, pues, de la Ley de Evidencia de 1905, no se encuentra la prohibición que contiene la sección 3 de la ley de 1904 que anteriormente hemos transcrito. ¿Quiere esto decir que fué la intención de la Legislatura establecer en absoluto el precepto de que las partes en los procedimientos civiles pueden declarar como testigos, aun en el caso de acciones ejercitadas contra herederos por virtud de convenios imputados a sus causantes?

Examinada la Ley de Evidencia de 1905 en su totalidad, no contiene ninguna cláusula por virtud de la cual se derogue expresamente la ley de 1904 a que nos hemos venido refiriendo. Dicha Ley de Evidencia de 1905, contiene sí una cláusula derogatoria general, en estos términos: "Todo real decreto, orden general, ley o parte de ley en conflicto con las disposiciones de ésta, quedan por la presente derogados."

¿Está en conflicto la ley de 1904 con la de 1905? Opinamos, con la corte sentenciadora, que no lo está, porque ambas leyes pueden subsistir y han venido subsistiendo en la práctica en la mayor parte de los Estados de la Unión Americana que, apartándose de la ley común, permitieron a las partes declarar como testigos.

Véase lo que dice Cyc con respecto a la regla general y a la excepción:

"Algunos estatutos declaran que las partes o personas interesadas en la acción son enteramente incompetentes como testigos en su propia defensa, de manera que no pueden declarar respecto a ninguna cuestión, pero en la mayor parte de los estatutos se considera que dichas personas son incompetentes únicamente en lo que respecta a ciertas cuestiones particulares, quedando libres para poder declarar sobre cuestiones que no están comprendidas en la prohibición del estatuto. De acuerdo con dicha regla la cuestión relativa a si cierta declaración es o no admisible depende de los términos del estatuto que esté en vigor en la jurisdicción donde se ofrece dicha prueba." 40 Cyc. 2310.

"El precepto del estatuto de que las partes y personas inte-
resadas en la acción son testigos competentes, está limitado a una
excepción que es tan general como la misma regla, pues en casi todos
los Estados los estatutos fijan restricciones a la competencia de las
partes y personas interesadas en acciones establecidas por los represen-
tantes sobrevivientes, o sucesores en título o derecho de personas
fallecidas o incapaces, o seguidas en contra de los mismos. Pero se
ha resuelto que no podrá dársele mayor alcance a los términos de la
excepción mediante interpretación judicial, ni será excluída ninguna
declaración cuando el caso no esté claramente comprendido en los
términos del estatuto." 40 Cyc. 2260.

2. No habiendo cometido la corte de distrito el primero
de los errores señalados por el apelante, pasemos al estudio
del segundo.

Contiene el alegato de la parte recurrente un análisis
hábil y cuidadoso de la prueba. No sólo declaró como se
ha dicho el demandante con respecto al hecho de que el finado
Jacob Axtmayer se había obligado a pagar los honorarios
que se reclaman, sino que también lo hicieron dos testigos
más, y se presentaron varias cartas relacionadas con el asun-
to. El testigo Díaz Viera declaró que al iniciarse el pleito
en el cual se prestaron los servicios, trabajaba como abogado
en el bufete de los Sres. Charlton y Pettingil, en el mismo
piso en que tenía su bufete el demandante; que a veces tra-
bajaba y se sentaba en la oficina del demandante; que en esa
época Jacob Axtmayer solía hacer frecuentes visitas a la
oficina del demandante, y que cierto día, hallándose él pre-
sente, el demandante dijo a Jacob Axtmayer que el caso de
Henry había tomado caracteres tan graves que prometía re-
sultar laborioso y difícil y que en vista de que Henry no tenía
bienes con qué responder, el demandante deseaba llegar a un
acuerdo con él con respecto a que le garantizara el pago de
sus servicios. Que Axtmayer manifestó entonces que él y
su esposa pagarían los honorarios de Henry. Y el testigo
Frederick Timpson, manifestó que estuvo a ver a Jacob
Axtmayer a instancia del demandante, para cerciorarse si
pensaba pagar los honorarios que debía su hijo al deman-

dante, y que el Sr. Axtmayer reconoció la obligación de pagarlos manifestando que estaba dispuesto a ello si se rebajaba la cuenta a una cantidad equitativa.

Refiriéndose a las anteriores declaraciones, el juez sentenciador se expresó así:

"Las declaraciones del Sr. Timpson, a quien conocía el finado como empleado del Sr. Wilcox, y del abogado Sr. Díaz Viera no han logrado convencernos y en tales circunstancias no nos encontramos en condiciones de declarar, sin temor a equivocarnos, que Jacob Axtmayer se hubiese obligado a pagar directamente el importe de los honorarios del demandante, en la forma sostenida por éste en su demanda enmendada."

Y por último, analizando el resto de la prueba, dijo el juez de distrito lo que sigue:

"Se ha presentado como prueba una carta fechada en 28 de mayo de 1913, y dirigida al finado Axtmayer por el Sr. Wilcox, en la cual se habla de un convenio verbal celebrado con el referido finado, haciéndose éste responsable por sí y su esposa de los honorarios de su hijo Henry. Con esta carta envió el Sr. Wilcox un proyecto de obligación para que fuese firmado por Jacob Axtmayer y su esposa, en el cual éstos, de haberlo firmado, quedaban comprometidos a pagar directamente los honorarios exigidos. El referido proyecto no fué firmado por los esposos mencionados. En 17 de junio de 1913, el demandante dirigió al finado Axtmayer una carta, fijando el valor de sus honorarios en $1,500 y exigiéndole el pago inmediato de dicha suma. A esta carta contestó el interesado, diciéndole que enviaría la cuenta a su hijo y que tan pronto como recibiera noticias de él lo pondría en su conocimiento. 'Según yo entiendo,' dice Axtmayer, padre, 'hay alguna equivocación en el montante exigido.' En 18 de abril de 1914 el propio demandante dirigió a la Srta. Rosa Axtmayer, hermana de Henry una carta, quejándose de que éste no le hubiera pagado y pidiéndole su dirección para escribirle con respecto a sus honorarios. En esta carta Wilcox pregunta a la Srta. Axtmayer si ella no estaría autorizada a pagar por Henry, y cargarlo a su herencia.

"En vista de estos antecedentes, entendemos que para disipar las dudas que los mismos arrojan en el ánimo de la corte, el Sr. Wilcox estaba obligado a probar de una manera clara y satisfactoria que efectivamente Jacob Axtmayer se comprometió a pagarle los honora-

rios de su hijo en la forma últimamente alegada. En cuanto a la esposa del finado, entendemos que éste nunca tuvo autoridad para obligarla sin su consentimiento. Para poder demandar a Jacob Axtmayer y su esposa, sin haber realizado antes las gestiones necesarias para cobrar los honorarios a ·Henry Axtmayer, el demandante tenía que probar sus alegaciones en la forma en que aparecen en la demanda, y como no se ha aportado prueba satisfactoria sobre este extremo, entendemos que el único responsable aquí es Henry Axtmayer, contra el cual ·debe dictarse sentencia, porque ha sido demandado en su carácter individual y también como heredero.''

Después de un examen cuidadoso de la prueba, no nos encontramos justificados para concluir que al apreciarla en la forma en que lo hizo la corte sentenciadora cometiera el manifiesto error que le atribuye la parte apelante.

Debe procederse con mucha cautela en la apreciación de una prueba semejante a la practicada en este caso. Jacob Axtmayer había muerto cuando la demanda se interpuso. El demandante no pudo presentar documento alguno en que Axtmayer reconociera directa o indirectamente en una forma clara y precisa la obligación que el demandante alega que contrajo para con él, y probar tal obligación por medio de manifestaciones hechas por una persona que ya no puede comparecer ante una corte a declarar sobre ellas, es en verdad bien arriesgado.

Tal vez sean enteramente ciertas la declaración del demandante y las de sus testigos. La actitud·que se dice que asumió Jacob Axtmayer cuando vió en peligro a su hijo, es lógica. Los hechos pudieron ocurrir perfectamente en la forma en que los narran el demandante y sus testigos. Pero la corte sentenciadora, el tribunal de primera instancia, el que recibió directamente los testimonios, no se sintió satisfecho, y a menos que existiera un flagrante error no estaríamos justificados para sustituir por el de ella nuestro juicio.

En tal virtud debe declararse sin lugar el recurso y confirmarse la sentencia apelada.

*Confirmada·la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, Aldrey y Hutchison.