JUAN JOSÉ GERARDINO, demandante y apelante, *v.* LA SUCESIÓN DE EMILIO V. DURÁN, compuesta de su VIUDA DOÑA MONSERRATE RIVERA, demandada y apelada.

No. 5814.—*Sometido:* Febrero 14, 1933. *Resuelto:* Marzo 10, 1933.

*Leopoldo Tormes* y *F. Colón Díaz,* abogados del apelante; *F. B. Fornaris,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

La presente es una acción en cobro de dinero en la cual entre otras cosas se alega que Emilio V. Durán, en abril de 1923, tomó a préstamo al demandante la cantidad de $908 para pagar las primas de ciertas pólizas de seguro que se habían hecho con la compañía The Manufacturers' Life Insurance Co., comprometiéndose dicho señor Durán a devolver dicha suma con sus intereses al recibir el pago de su indemnización por los daños sufridos en el hundimiento del vapor Carolina en la época de la Guerra Mundial, y que tenía

pendiente de cobrar. Se alega además que la viuda de Durán doña Monserrate Rivera, como su única heredera, recibió la indemnización del gobierno alemán y que a pesar de las gestiones del demandante no ha pagado ni en todo ni en parte la referida suma.

El demandante, Juan José Gerardino, interpuso recurso de apelación contra la sentencia de la corte inferior declarando sin lugar la demanda. Se alega en primer término que la corte inferior cometió error al permitir declarar como testigo a la demandada Monserrate Rivera, esposa que fué y heredera de Emilio V. Durán, sobre comunicaciones hechas por su esposo finado, no obstante la oposición vigorosa que en tiempo y forma hizo la parte demandante, y todo ello con infracción a lo que establece la sección tercera de la ley de 12 de marzo de 1904, derogando el artículo 1215 del Código Civil y la jurisprudencia de ese tribunal en el caso de *Wilcox* v. *Axtmayer,* 23 D.P.R. 343.

Antes de proseguir a discutir este alegado error, deseamos copiar las conclusiones de hecho de la corte inferior:

"Por la apreciación que ha hecho la corte de toda la prueba, es de opinión que se ha probado que allá para el mes de mayo del año 1923, Emilio Baudilio Durán, el esposo de la aquí demandada doña Monserrate Rivera, era un hombre pobre, empleado que ganaba unos $900 al año, cuyo estado de salud era malo, pues padecía de tuberculosis pulmonar, a tal extremo que falleció de dicha enfermedad el día 19 de julio de 1924; que el día 14 de mayo de 1923, dicho Emilio Baudilio Durán se aseguró la vida con la Manufacturers' Life Insurance Co., por medio de su agente en Ponce, Joaquín Tellechea, en tres pólizas por las sumas de $1,000, $4,000 y $15,000, cuyas primas anuales eran de $45.40, $181.60 y $681 respectivamente; que las primas correspondientes al primer año, ascendentes a $908 fueron pagadas por el aquí demandante Juan José Gerardino al señor Tellechea a nombre de dicho Emilio Baudilio Durán debido a que la póliza No. 283438 por $1000 se hizo para beneficio de y pagadera a su esposa Monserrate Rivera, mientras que las pólizas No. 283436 y No. 283437 por $4,000 y $15,000 respectivamente, se hicieron a beneficio de y pagaderas a los 'albaceas, administradores o cesionarios' de dicho Emilio Baudilio Durán, habiéndose convenido por el deman-

dante Juan José Gerardino y dicho Emilio Baudilio Durán que Gerardino se quedaría y guardaría estas dos pólizas, como lo hizo, mientras que la de $1,000 le fué entregada por Durán a su esposa; que dicho Emilio Baudilio Durán nunca convino con el demandante en pagarle el importe de dichas primas con lo que obtuviera del gobierno con su indemnización como consecuencia del hundimiento del vapor 'Carolina', ya que dicho procedimiento no se había iniciado todavía para aquella fecha, sino que fué la intención de las partes en el convenio que las dos pólizas por $4,000 y $15,000 serían oportunamente endosadas por Emilio Baudilio Durán a favor del demandante como cesionario y que fué como consideración de esto que se hizo la otra póliza de $1,000 pagadera a su esposa; que por motivos que no aparecen muy claros de la prueba, pero fáciles de comprender, ninguna de dichas pólizas fué renovada al vencer el primer año, siendo un hecho indiscutible, sin embargo, que Emilio Baudilio Durán falleció de tuberculosis a los cuatro meses escasos de vencer dicho primer año.''

A nuestro juicio la sentencia apelada puede sostenerse sin necesidad de acudir a las manifestaciones de la viuda Monserrate Rivera, que tienen su origen en informaciones recibidas de su esposo. La corte, al dictar su fallo, tomó en consideración la prueba de una y otra parte. Examinaremos dicha prueba, prescindiendo de la información que la viuda Monserrate Rivera derivara directamente de su referido esposo. Se ha demostrado que Durán ganaba de $10 a $15 semanales y que era su sueldo lo único con que contaba para vivir. A pesar de su pobreza aparece asegurándose por la cantidad de $20,000 y pagando por un año el primer plazo de las primas de las pólizas, ascendente a $908 que le facilitó el demandante Juan José Gerardino. Estos $20,000 se distribuyeron por el asegurado en tres pólizas, una de ellas por $1,000 extendida a favor de su esposa, y las otras por $15,000 y $4,000 respectivamente, extendidas a favor de sus albaceas, administradores y cesionarios. Todas estas operaciones surgen de una misma transacción y en ella intervienen el asegurado Emilio Durán, el representante de la compañía aseguradora Joaquín Tellechea, y el demandante Juan José Gerardino. Llama la atención que Durán, que recibe un sueldo reducido

y carece de medios de fortuna, encuentre una persona que le facilite $908 para asegurarse, con la vaga promesa de devolver esta cantidad cuando reciba una indemnización que tiene esperanzas de cobrar como superviviente en el hundimiento del vapor Carolina. Y este préstamo se facilita en el año 1923 a un hombre enfermo con tuberculosis pulmonar, para cobrarlo en una fecha indefinida en caso de que Durán obtuviese la indemnización a que creía tener derecho. Esta indemnización se pagó seis años después, en 1929, y Durán murió un año y meses después de haber facilitado Gerardino los $908. Sin embargo, el Sr. Gerardino no se preocupa tanto de este posible acontecimiento futuro, del cual depende el cobro de su crédito, como de asegurar la vida al Sr. Durán, a quien no entrega el dinero hasta no ver terminado el negocio de las pólizas, que se cuida de conservar en su posesión. Su propio testigo, el Sr. Tellechea, representante de la compañía aseguradora, que permitió que un hombre insolvente y enfermo se asegurase por la cantidad de $20,000, nos da la clave de este interés de Gerardino en asegurar a Durán y conservar las pólizas en su posesión. Tellechea declara que le entregó las pólizas a Durán y que éste se quedó con la de $1,000 extendida a favor de su esposa, y las otras dos, ascendentes a $19,000 se las entregó a Gerardino. El abogado de la demandada le preguntó, mostrándole una de las pólizas, por qué estaba la misma en poder de Gerardino y no de Durán o su familia, y el testigo contestó: ''precisamente porque éste era el documento que garantizaba la operación que ellos habían hecho, el préstamo.'' También declara Tellechea que como el que iba a dar la plata era Gerardino, le exigió a Durán que hasta que no estuviesen las pólizas definitivas él no hacía el negocio ni daría el dinero. ¿Por qué tenía Gerardino tanto interés en el negocio de las pólizas? ¿Qué razones le movieron para conservarlas en su poder? ¿Pensaba cobrar su crédito de las pólizas cuando falleciera Durán, o esperaba la indemnización procedente del hundimiento del Carolina? No hay duda de que estas pólizas se

constituyeron con algún fin. Que el propósito de Durán no fué favorecer a su esposa con la totalidad de la suma asegurada lo demuestra el hecho de haber separado en la misma transacción una póliza de $1,000 extendida a favor de su esposa, que conservó en su poder, y haber entregado a Gerardino las dos pólizas restantes extendidas a favor de los albaceas, administradores y cesionarios. ¿A quién se trató de beneficiar con estas pólizas si no hubo el propósito de favorecer a la esposa, única persona a quien Durán, que carecía de ascendientes y descendientes, podría tener interés en proteger? A Juan José Gerardino, seguramente. Es el nombre que surge a los labios una vez conocidos los detalles y circunstancias que rodean esta desagradable transacción. ¿Cómo? Los autos no arrojan toda la luz que ha debido producirse en el presente caso. Las pólizas debían pagarse a los albaceas, administradores y cesionarios. La corte inferior declara en sus conclusiones de hecho que la intención de las partes fué que estas pólizas serían oportunamente endosadas por Emilio Durán a favor del demandante. Es un hecho, sin embargo, que transcurrió un año sin que se pagase la nueva prima y que las pólizas no fueron cobradas por no haberse pagado el premio oportunamente. Cuando se preguntó a Tellechea si se acordaba de que el Sr. Gerardino envió a pagar las primas, habiéndose devuelto el cheque por haber llegado tarde, contestó que no se acordaba. Como en este caso todo parece raro y extraordinario, se ofrece en evidencia un pagaré que Durán aparece autorizando con su firma. La viuda declaró enfáticamente que no era la firma de su esposo. La corte no admitió el documento como prueba porque la demanda no se basa en un pagaré y la demandada alegó que había sido sorprendida con la presentación de esta evidencia. Se tomó excepción por el demandante, pero esta cuestión no ha sido planteada ante nosotros en el señalamiento de errores.

En el testamento de Durán declarando heredera a su esposa, ofrecido como prueba por el demandante, el testador hace constar que no tiene deudas contraídas para con nadie.

El Sr. Durán, que no tenía otra cosa que su salario, declara a su esposa heredera de lo que se obtuviese de un pleito que se estaba tramitando y de la indemnización por el hundimiento del vapor Carolina.

La viuda declara que el Sr. Gerardino tenía una combinación para hacer seguros, y que como su esposo no estaba bien de salud quiso asegurarlo. No examinamos en toda su integridad la declaración de esta señora, porque descansa principalmente en manifestaciones que le hiciera su esposo, pero vamos a copiar un fragmento del testimonio de Marcelino Rivera, admitido como prueba sin oposición, que en su última parte dice así:

"Pues había venido a Ponce a unas diligencias y como de costumbre siempre, a ver a mi hermana; y después de estar un rato con ella y otro amigo que me acompañaba, se presentó el marido ya un poco más tarde, y como algo apesadumbrado le entregó—'aquí tienes.' Él ya estaba bastante enfermo, y lo demuestra que murió al año siguiente. Dice, 'como mi vida ya es corta, mi salud ya es corta. . . .' Y trajo una póliza de mil pesos. '¿Y has hecho esto?,' dijo ella; y él dijo, 'sí, como ya no me resta nada que perder, no me queda nada, he hecho esto, pero tengo la pena que el señor Gerardino se comprometió a darme cinco mil pesos a mí y él pagar los gastos y a última hora me ha dado mil pesos y se ha quedado con diez y nueve.' Y mi hermana y yo lo recriminamos—'mal hecho'—porque él podía curarse todavía y sabía que tenía un cuñado que podría trabajar para ayudar a su hermana si él faltara algún día. Y yo le dije, 'diez y nueve mil pesos es una cantidad bastante bonita para hacerle pasar un fracaso a cualquiera,' y yo lo aconsejé que no hiciera eso."

La verdad es que estas manifestaciones tienen un grado acentuado de verosimilitud, examinadas conjuntamente con la prueba del demandante. La prestación de esta suma que aparece facilitada a Durán, con la vaga promesa de cobrarla en el futuro, cuando se pagase cierta indemnización, la actitud del representante de la compañía aseguradora facilitando el seguro con una persona enferma y de insolvencia reconocida, la separación de una póliza de $1,000 para la esposa, la entrega de las otras dos pólizas a Gerardino para que las con-

servara en su poder, el interés manifiesto de éste en asegurar a Durán y en obtener la posesión de dichas pólizas, son detalles y circunstancias que tienden a demostrar que en este asunto no se jugó limpio y que Gerardino no facilitó los $908 con el propósito de recobrarlos de Durán, de quien sabía que no podía pagarlos, porque era completamente insolvente y quien además se encontraba bastante enfermo cuando se llevó a cabo toda esta transacción. Parece claro que esta suma no se facilitó en calidad de préstamo, que Durán no se lucró de ella y que por lo tanto su viuda y heredera no está obligada al pago de la misma.

Se alega que la corte inferior erró al admitir una enmienda a la contestación para conformarla con la prueba ilegalmente introducida durante el juicio, con la oposición del demandante. Ya hemos dicho que la prueba aportada es bastante para sostener la sentencia de la corte inferior, descartando las manifestaciones de la esposa basadas en comunicaciones recibidas de su marido. El demandante no ha probado que facilitara la suma que reclama en calidad de préstamo. Esta conclusión, a nuestro juicio, surge de su propia prueba, aisladamente considerada, y se corrobora y robustece cuando se examina la prueba de ambas partes, excluyendo las comunicaciones de Durán a su esposa.

Los errores tercero y cuarto relacionados con la apreciación de la prueba deben desestimarse por las razones expuestas en el curso de esta opinión. También se desestima el error atribuído a la corte inferior por haber condenado en costas al demandante.

*Debe confirmarse la sentencia apelada.*