SOLEDAD MORALES, por sí y como heredera de su esposo MÓNICO ACEVEDO Y ACEVEDO, demandante y apelada, *v.* ELEUTERIO LOPERENA y ANICETO CEIDE, demandados y apelante el último.

Núm. 6954.—*Sometido:* Enero 26, 1937. *Resuelto:* Febrero 24, 1937.

*Arturo Reichard del Valle* y *Rafael O. Fernández,* abogados del apelante; *García Méndez & García Méndez,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

La demandante alega que es dueña y poseedora de una finca rústica de 11.74 cuerdas, la que adquirió en unión de su difunto esposo Mónico Acevedo; que por escritura núm. 122 de 29 de agosto, 1929, aparecen la demandante y su esposo vendiendo dicha finca al demandado Eleuterio Loperena por $1,400, recibidos antes del otorgamiento, pero que en realidad no hubo entrega alguna de dinero y sí la promesa de Loperena de devolver el título de la finca a la demandante o a su esposo cuando ocurriera el fallecimiento de uno de los dos; que el demandado Loperena, valiéndose de la íntima amistad que tenía con los esposos Acevedo y abusando de la ancianidad e ignorancia de éstos, les hizo creer que el otro demandado, Aniceto Ceide, les iba a demandar con el propó-

sito de quitarles la finca y que el único modo de salvarla era pasarle el título a Loperena, quien la devolvería más tarde al cónyuge supérstite; que las falsas y fraudulentas representaciones de Loperena fueron hechas por éste en combinación y de acuerdo con el demandado Aniceto Ceide; que cuatro días después de otorgada la escritura, advertido de lo peligroso que era el acto realizado por él y su esposa, Mónico Acevedo requirió a Loperena para que le traspasara de nuevo la finca, pero éste se negó a hacerlo, ofreciéndoles en cambio un contradocumento en el que se obligaba a devolverles la finca al ocurrir el fallecimiento de uno de los esposos; que en 5 de septiembre de 1929 Loperena hipotecó la finca para garantizar un pagaré hipotecario al portador, por la suma de 1,700; que al fallecer la esposa de Loperena, la finca fué adjudicada a éste como gananciales y aportación; que al fallecer Mónico Acevedo la demandante vino a ser la única dueña de la propiedad; que con el propósito preconcebido de defraudar a la demandante, Loperena endosó a Ceide el referido pagaré hipotecario, y que Ceide, conociendo la falsedad de la escritura de venta de Acevedo a Loperena, la existencia del contradocumento otorgado por Loperena y la falsedad del pagaré hipotecario, trata de cobrar dicho documento amenazando a la demandante con pleitos para lanzarla de la finca; que al ocurrir el fallecimiento de su esposo, la demandante requirió a Loperena para que le devolviese la finca, contestando éste con evasivas y sin descubrir a la demandante las negociaciones hechas por él con la finca, las que han sido descubiertas por el abogado que la representa; que la finca tiene un valor de $4,000 y que la demandante ha sufrido daños y perjuicios por la suma de $1,000 como consecuencia de los actos realizados por los demandados. Pide la demandante que se dicte sentencia por la que se declare que ella es la única y legítima dueña del inmueble; que las escrituras, el pagaré y las demás actuaciones de los demandados son nulos y sin valor legal alguno; y que se condene a

los demandados al pago de $1,000 como indemnización, más las costas, gastos y honorarios de abogado.

Después de haber sido desestimadas las excepciones previas presentadas por cada uno de los demandados, el demandado Loperena radicó un escrito en el que manifiesta su deseo de no defenderse. El demandado Ceide contestó la demanda y en su contestación, después de alegar que la demanda no aduce hechos bastantes para determinar una causa de acción y de negar los hechos esenciales en ella alegados, interpone como defensas las siguientes:

1ª. Que la demandante, su esposo y Loperena se combinaron para defraudar al demandado Ceide e impedirle cobrar la suma de $943.58 que Mónico Acevedo le adeudaba.

2ª. Que la demandante posee la finca objeto de esta acción, no como dueña sino como arrendataria de Eleuterio Loperena.

3ª. Que en 31 de diciembre de 1929 Acevedo adeudaba al demandado Ceide $981.32; que en agosto del mismo año Ceide requirió a Acevedo para que le garantizase la cuenta, ascendente entonces a $943.58, lo que ofreció hacer el deudor; que en septiembre siguiente, al enterarse Ceide de que Acevedo y su esposa, con la intención de defraudarle en el cobro de su acreencia, habían traspasado la finca a Loperena, sin recibir de éste precio alguno, puso el caso en conocimiento del entonces Fiscal del Distrito de Aguadilla, Licenciado Flores, quien le pidió le presentase varias declaraciones juradas y así lo hizo el demandado; que en 31 de diciembre, 1929, Mónico Acevedo ofreció a Ceide garantizarle la deuda y pagársela si le hacía una rebaja y que después de una discusión llegaron a un acuerdo mediante el cual Ceide redujo la deuda a $481.32 y entregó a Mónico Acevedo en efectivo $1,218.68 más, a cambio de cuyas sumas, que ascienden a $1,700, Mónico Acevedo le cedió y entregó el pagaré hipotecario otorgado y entregádole por Eleuterio Loperena y garantizado con hipoteca sobre la finca que la demandante reclama como suya; que al vencer dicho pagaré, Ceide requirió a Loperena para que le pagase su importe, pero éste se confabuló con la demandante Soledad Morales para defraudar a Ceide e impedirle el cobro de la obligación, haciéndose demandar por Soledad Morales en el presente caso y allanándose a las imputaciones de fraude que en la demanda se le hacen, a pesar de haber sido parte en todas las negociaciones he-

chas con la finca, incluyendo la hipoteca otorgada por él, Loperena, a favor de Alberto Esteves por la suma de $1,000.

La corte inferior dictó sentencia a favor de la demandante en cuanto a las alegadas causas de nulidad y sin lugar en cuanto a la reclamación de daños y perjuicios por no haberse ofrecido evidencia en cuanto a los mismos. El demandado Ceide apeló. En el señalamiento formulado se imputa a la corte sentenciadora la comisión de diecisiete errores. Los dos primeros están relacionados con la admisión de evidencia. Los quince restantes se refieren a la alegada insuficiencia de la prueba, a la apreciación de la evidencia por la corte y a la credibilidad de los testigos. Los alegados errores 1 y 2 leen así:

"1. La corte de distrito cometió manifiesto error y actuó con parcialidad al admitir contra el demandado Aniceto Ceide manifestaciones del difunto Mónico Acevedo, y al no admitir a favor de dicho demandado otras manifestaciones de dicho difunto.

"2. La corte de distrito cometió manifiesto error al admitir contra Aniceto Ceide supuestas manifestaciones y documentos del codemandado Eleuterio Loperena."

Se basa el primer señalamiento en los siguientes incidentes:

■ Al declarar el testigo de la demandante, Francisco Varela, dijo que la última vez que estuvo en casa del demandado Ceide fué en el mes de la Monserrate de 1928; que fué a llevar unos ñames a casa de don Aniceto, acompañando a don Mónico Acevedo. Y al ser preguntado sobre lo que pasó allí esa vez, respondió:

"Sí, señor, los ñames pesaron diez quintales y don Aniceto se los compró a peso y medio, que importaban $15.00, y después don Mónico le dijo a don Aniceto . . . . "

Opúsose el abogado del demandado fundándose en que no es admisible traer por boca de un testigo declaraciones o manifestaciones hechas por una persona fallecida. La corte admitió la pregunta, tomó excepción la defensa y continuó declarando el testigo:

"En esa última vez que vino don Mónico conmigo le dijo él a don Aniceto que le diera unos chavos, y entonces don Aniceto le dijo que él mejor le debía a don Aniceto que don Aniceto a él, que poco era pero que le debía, y ahí tuvieron una lucha y entonces Mónico se fué y yo me fuí también. Él lo único que dijo que no creía eso de don Aniceto que le dijera que no tenía nada allí; que él tenía unos centavos allí y se fué envenenado."

Solicitó el abogado del demandado la eliminación del testimonio de Varela *"en lo que se refiere a las manifestaciones habidas entre Acevedo y Ceide allá en el 1928, por ser inadmisibles."* Negada la eliminación, el demandado anotó su excepción. Y ahora nos cita en apoyo de su contención el inciso 4 del artículo 397 del Código de Enjuiciamiento Civil (ed. 1933), y varias decisiones de esta Corte Suprema que creemos inaplicables a la cuestión que discutimos. Somos de opinión que no hubo error en la admisión de lo declarado por el testigo Varela sobre las manifestaciones hechas por el difunto Acevedo. Esas manifestaciones, que fueron hechas en presencia del demandado Ceide, eran admisibles de acuerdo con el citado artículo 397, inciso 3, que dispone:

"Artículo 397.—De conformidad con las precedentes disposiciones, podrá presentarse en un juicio evidencia de los hechos siguientes:

"1. . . . . . . . . .

"2. . . . . . . . . .

"3. El acto o declaración de otra persona, en presencia y bajo la observación de una parte, y la conducta de ésta, relacionada con dicho acto o declaración."

Véanse: *Estate of Snowball*, 157 Cal. 301; *Tibbet* v. *Sue*, 125 Cal. 544.

Al declarar el demandado Ceide sobre manifestaciones hechas a él por Acevedo y sobre actos realizados por éste, el abogado de la demandante pidió que se eliminase todo lo relacionado con actos y manifestaciones de Mónico Acevedo, por haber éste fallecido. La corte ordenó la eliminación de las manifestaciones hechas por el difunto y denegó la eliminación de lo declarado en cuanto a actos del finado. Tomó excepción el abogado de la demandante. De la trans-

cripción de la evidencia aparece que entonces ocurrió lo siguiente:

"Continúa el abogado de los demandados preguntando al testigo.

"P. Señor Ceide: Absténgase de hablar de aquello que Mónico Acevedo pueda haberle dicho a usted. ¿Mónico Acevedo estuvo en su establecimiento ese día?

"R. Sí, señor.

No solamente no aparece del récord que el abogado del demandante tomara excepción, lo que bastaría para que desestimásemos este señalamiento, sino que de él consta que el abogado del demandado se allanó a la resolución eliminatoria al dar instrucciones a su cliente para que se abstuviese de hablar sobre las manifestaciones que pudiera haberle hecho el difunto. No cometió error la corte al eliminar las supuestas declaraciones del finado. Ellas eran inadmisibles. Véase: *Wilcox* v. *Axtmayer et al.*, 23 D.P.R. 343.

■ Examinaremos ahora el segundo error señalado.

Después de haber declarado la demandante que Eleuterio Loperena, uno de los demandados, fué quien le aconsejó a ella y a su esposo que le traspasaran la finca, el abogado de la demandante le preguntó:

"P. Por qué le aconsejó que hicieran eso?

"R. Porque don Tello (Loperena) decía que don Ceide nos iba a quitar la finca."

Se opuso el abogado del demandado Ceide y la corte admitió la pregunta por entender que *ésa es la explicación y el por qué de haberse hecho ese contrato y la corte necesita enterarse y penetrar en todas aquellas cuestiones que la lleven a resolver este caso en justicia.* La defensa tomó excepción.

Somos de opinión que la pregunta era pertinente y admisible. La alegada nulidad de la escritura de traspaso de los esposos Acevedo a Loperena está basada en la alegación que se hace en la demanda de que Loperena indujo a la demandante y a su esposo a pasarle la finca, haciéndoles creer que Aniceto Ceide les iba a demandar para quitarles la pro-

piedad. La pregunta y contestación que discutimos tendían a probar, no la existencia de una conspiración entre Ceide y Loperena, sino simplemente las representaciones hechas por el último para inducir a los dueños de la propiedad a ponerla a su nombre. No hubo error en la resolución de la corte sobre este extremo.

■ Al preguntar el abogado de la demandante al testigo Luis A. Rosario, Notario Público, sobre declaraciones hechas ante él por el demandado Loperena, se opuso el abogado del demandado Ceide por el motivo de que en el momento en que Loperena hizo esas manifestaciones no se encontraba presente el demandado Ceide. La corte admitió la pregunta, tomó excepción la defensa y el testigo declaró así:

"R.— . . . el señor Loperena procedió a explicarme que lo que quería hacer constar era que una finca que le había traspasado a él el señor Mónico Acevedo, a pesar de que él tenía el título de la misma, lo cierto era que la finca era del señor Mónico Acevedo y de su esposa, y que el traspaso se lo habían hecho por razón de que el señor Loperena era muy amigo de la familia y que era un buen agricultor y podía Mónico y su esposa derivar mayores beneficios en la explotación de la finca, pero que él no tenía ningún interés en la finca y que estaba dispuesto a traspasársela a ellos cuando ellos lo exigieran.

"P.—¿Manifestó él allí que en esa escritura no había habido precio ni consideración de especie alguna?

"R.—Bueno, él me dijo como dije primeramente; que se la habían traspasado simplemente para que él la administrara nada más, pero él reconoció allí mismo que el título, a pesar de habérsele dado a él una escritura, residía en Mónico y su esposa, o sea que la finca era de Mónico y su esposa."

No es necesaria la presencia del demandado Ceide para que las citadas declaraciones de Loperena sean admisibles como evidencia para sostener la nulidad de la escritura por falta de causa o consideración. Las declaraciones transcritas no se refieren en manera alguna a Ceide, no tienden a probar la alegada combinación, y en nada pueden perjudicarle. Loperena es uno de los demandados en este caso y las admisiones hechas por él en contra de su propio interés

pueden ser aceptadas como prueba para sostener la causa de acción que contra él se alega. El hecho de que esas declaraciones puedan afectar en alguna forma la causa de acción en cuanto al otro demandado, no las hace inadmisibles. Y opinamos que la corte no erró ni al admitirlas ni al denegar su eliminación.

■■ Todos los demás errores señalados se refieren, según hemos dicho antes, a la apreciación que de los hechos hizo la corte sentenciadora y al crédito que ésta dió a los testigos de la demandante.

Tanto la teoría de la demandante como la del demandado se basan en una supuesta confabulación de una de las partes con Eleuterio Loperena para defraudar a la otra. La demandante acusa al demandado Ceide de haberse confabulado con Loperena para que éste la indujera a ella y a su esposo a traspasarle la finca, para más luego hipotecarla y entregar el pagaré a Ceide. Éste alega en su defensa, que la escritura de venta de los esposos Acevedo a Loperena fué otorgada en virtud de una conspiración fraguada por los otorgantes con el propósito de defraudarle. Ambas teorías coinciden en que la escritura núm. 122 de 29 de agosto de 1929, es nula por el hecho de no haber mediado precio o consideración alguna en su otorgamiento. La prueba de una y otra parte sostiene fuera de toda duda que Eleuterio Loperena no pagó suma alguna a los esposos Acevedo por el traspaso de la finca; y que el demandado Ceide tuvo conocimiento de la existencia de esa causa de nulidad desde mucho antes de que el pagaré le fuera entregado, bien por Mónico Acevedo para saldar su deuda y en consideración a una suma adicional, o bien por Loperena como parte del plan para defraudar a Acevedo. Hemos estudiado detenidamente toda la prueba del caso y no la consideramos suficiente para sostener ni una ni otra de las dos alegadas conspiraciones. En realidad no hay prueba de que en el otorgamiento de la escritura, ni al hacer las representaciones que precedieron a dicho otorgamiento, Loperena actuara de acuerdo con un plan preconce-

bido entre él y Ceide para defraudar a Acevedo; y tampoco la hay de que éste se combinara con Loperena para defraudar a Ceide.

El demandado Ceide sostiene que aun cuando la escritura de traspaso de la finca sea nula por falta de. causa y por haber sido otorgada como resultado de las fraudulentas representaciones de Loperena, la hipoteca y el pagaré por ella garantizado han quedado convalidados por el hecho de haber sido dicho pagaré aceptado por Mónico Acevedo y entregado por éste a Ceide, según éste alega, en pago de una deuda y por la suma adicional de $1,218.68. La corte inferior, después de hacer un examen minucioso de la prueba referente a la alegada transacción entre Mónico Acevedo y Aniceto Ceide, no dió crédito a la prueba aducida por Ceide y llegó a la conclusión de que Ceide recibió el pagaré de manos de Loperena y. no de manos de Mónico Acevedo.

Aceptada como lo está la nulidad de la escritura de los esposos Acevedo a Loperena, y aceptado como consecuencia que aquéllos siguieron siendo los únicos y verdaderos dueños de la finca, si aceptáramos como hechos ciertos que Loperena con el solo consentimiento de Mónico Acevedo hipotecó la finca y entregó el pagaré hipotecario a Mónico Acevedo y que éste lo entregó al demandado Ceide en pago de una deuda, ¿serían esos hechos suficientes en derecho para convalidar la escritura de venta y hacer válidos la hipoteca y el pagaré como obligaciones de la esposa, la aquí demandante, quien no dió nunca su consentimiento para tal convalidación?

Al resolver esta cuestión la corte inferior se expresó así:

"Aunque por razón de las consideraciones antes expresadas la corte es de opinión que debe dictar sentencia a favor de la parte actora, no desea terminar esta opinión sin expresar el alcance que hubiera tenido, aun en el caso de ser válida, la alegada operación realizada por Mónico Acevedo con Ceide en 31 de diciembre de 1929. La Corte no cree que tal operación se realizara, pero a mayor abundamiento desea sostener que Mónico Acevedo no tenía autoridad para obligar con el supuesto acto del 31 de diciembre de 1929 a su esposa

Soledad Morales. El artículo 159 del Código Civil dispone lo siguiente:

"Art. 159.—El marido será el administrador de los bienes de la sociedad conyugal, salvo estipulación en contrario.

" . . . . . . . . . .

"No obstante, los bienes inmuebles de la sociedad conyugal no podrán ser enajenados o gravados, bajo pena de nulidad, sino mediante el consentimiento expreso de ambos cónyuges."

"El artículo 1327 del Código Civil repite 'que el marido es el administrador de la sociedad de gananciales,' con las salvedades que establece. Y el 1328 expresa que 'sin embargo de las facultades que tiene el marido como administrador, no podrá donar, enajenar, y obligar a título oneroso, los bienes inmuebles de la sociedad de gananciales, sin el consentimiento expreso de la mujer. Toda enajenación o convenio que sobre dichos bienes haga el marido, en contravención a este artículo, y los demás dispuestos en este Código o en fraude de la mujer, será nulo y no perjudicará a ésta ni a sus herederos.'

"La ley, pues, prohibe toda actuación del marido con bienes pertenecientes a la sociedad de gananciales que signifique una enajenación o gravamen, sin el expreso consentimiento de la mujer. No resulta en forma alguna que doña Soledad Morales interviniera en la supuesta transacción, ni que consintiera tampoco en el otorgamiento por Loperena a sus espaldas y a base de un título simulado de la escritura de pagaré hipotecario. Entiende el Juzgador que aun suponiendo, en el terreno de las concesiones hipotéticas, que la operación entre don Mónico Acevedo y don Aniceto Ceide tuviera efecto el día 31 de diciembre de 1929 y que tal actuación convalidaba la escritura de hipoteca y la de venta simulada, tal actuación necesitaba la convalidación por el expreso consentimiento de doña Soledad. Y la prueba indica que no hubo intervención alguna de parte de doña Soledad en la supuesta transacción."

Estamos conformes con el razonamiento de la corte sentenciadora. Y no puede el demandado apelante alegar su condición de tercero en relación con la aceptación del pagaré hipotecario de manos de Acevedo o Loperena, porque según su propia declaración en el acto del juicio él sabía desde el mes de septiembre de 1929 que la venta a Loperena era nula; y la aceptación del pagaré no tuvo lugar hasta el mes de diciembre del mismo año. Si Ceide recibió el pagaré en esas circunstancias, sin que exista prueba alguna del conocimiento

o consentimiento de la demandante, ésta no está obligada por el acto de su esposo.

*Por las razones expuestas debe confirmarse y se confirma la sentencia apelada.*

Los Jueces Asociados Señores Wolf y Córdova Dávila no intervinieron.