ERNESTO y ROSA FRANQUIS PIÑERO, representados por su madre con patria potestad ANA PIÑERO, demandantes y apelantes, *v.* JESÚS GONZÁLEZ GARCÍA, demandado y apelado. Los MISMOS, demandantes y apelados, *v.* EL MISMO, demandado y apelante.

Núms. 8081 y 8086.—*Sometidos:* Mayo 7, 1940. *Resueltos:* Julio 26, 1940.

*Francisco González Fagundo,* abogado de los demandantes, apelantes y apelados; *José C. Rivera,* abogado del demandado, apelado y apelante.

El Juez Asociado Señor Travieso emitió la opinión del tribunal.

En la demanda interpuesta en este caso se alega:

"1. Que por escritura número 146 de 17 de noviembre de 1930 ante el notario Fulgencio Piñero Rodríguez, Jesús González García y su esposa Cristina Martínez reconocieron haber recibido en calidad de préstamo de don Francisco Franquis la suma de quinientos dólares que se comprometieron a devolver el día 30 de junio de 1931, con interés al 12 por ciento anual.

"2. Que llegado el día 30 de junio de 1931, el demandado no ha satisfecho el capital de quinientos dólares ni los intereses ascendentes a treinta y siete dólares cincuenta centavos.

"3. Que en la escritura referida en el hecho primero de esta alegación se pactó que en caso de reclamación judicial los deudores se obligaban a satisfacer $200 para costas y honorarios de abogado.

"4. Que don Francisco Franquis falleció en el año 1936 y en las operaciones particionales de los bienes quedados a su fallecimiento se adjudicó a los demandantes el crédito hipotecario a que se refieren las alegaciones precedentes.

"Por lo que suplican de la corte dicte sentencia contra el demandado condenándole a satisfacer $500 de capital, $37.50 de intereses y $200 fijados para costas y honorarios de abogado."

El demandado excepcionó la demanda, alegando exclusivamente que la misma no aducía hechos suficientes para determinar una causa de acción. La corte declaró sin lugar la excepción y el demandado contestó, y como materia nueva alegó que el demandado tenía un contrato de refacción con el causante de los demandantes y que por virtud del mismo el demandado en efecto entregó a dicho causante varios quintales de tabaco en rama en cantidad suficiente para cubrir el capital del préstamo, ascendente a $500; que sólo adeudaba la suma de $36.50, y solicitaba de la corte declarara sin lugar la demanda, excepto en cuanto se refería a los $36.50 que el demandado aún adeudaba a los demandantes. El demandado solicitaba otros pronunciamientos que es innecesario discutir.

El caso fué a juicio, la corte inferior emitió una opinión en que discutía y apreciaba la prueba y finalmente dictó sen-

tencia al efecto de que el demandado no adeudaba a los demandantes parte alguna de los $500, pero que sí les debía la suma de $36.50, además de $200 para costas y honorarios de abogado.

Ambas partes apelaron. Discutimos primeramente la apelación de los demandantes. Los errores señalados se dirigen todos a la inadmisibilidad de la prueba por referirse a manifestaciones hechas por el causante de los demandantes, quien había muerto.

Los hechos del caso aparecen de la opinión emitida por la corte inferior, a saber:

"La cuestión principal a resolver, a juicio del tribunal según se desprende de la prueba de los demandantes y del demandado, es si fué celebrado entre el demandado y Francisco Franquis un contrato refaccionario para siembra de tabaco correspondiente a la cosecha del año 1930–1931, y si el préstamo hipotecario a que se refiere la demanda fué otorgado única y exclusivamente como garantía colateral de dicho contrato. Con respecto a la celebración del contrato no hay duda alguna, según se desprende de la certificación librada por el Registrador de la Propiedad de Caguas. Este contrato se celebró el día 17 de noviembre del año 1930. En igual fecha aparece otorgada là escritura número 146, ante el notario Fulgencio Piñeiro Rodríguez, en la cual Jesús González García y su esposa Cristina Martínez reconocieron haber recibido en calidad de préstamo de don Francisco Franquis la suma de $500. Esta identidad de fechas en el otorgamiento, tanto del contrato refaccionario como del préstamo, llevan a este tribunal a la conclusión de que en este caso el préstamo hipotecario fué otorgado única y exclusivamente como garantía colateral del contrato refaccionario. Es indudable que celebrado el contrato refaccionario, Jesús González, o sea el demandado, procediese a la siembra y cultivo de las 6 cuerdas de tabaco a que se contraía el mismo. La producción normal de una cuerda de tabaco en la zona de Juncos, Caguas, Gurabo o San Lorenzo es de 5 a 6 quintales, e indudablemente los 28.25 quintales a que se refiere el demandado fueron entregados por éste a Francisco Franquis. Blas Mangual, testigo del demandado, y que fué empleado de Francisco Franquis, testificó en el sentido de que condujo el tabaco de la casa de Jesús González a los almacenes de Franquis en Juncos. Indudablemente también, al llegar al mes de junio, se procedió a la liquidación del

contrato refaccionario. Por regla general estos contratos se garantizan con hipoteca, además de la obligación principal. Nada hay en la prueba que revele el hecho de que el crédito reclamado procediese de una transacción distinta a la alegada por el demandado. Los demandantes pudieron haber ofrecido prueba a este tribunal a los fines de demostrar que la liquidación no se efectuó en la forma y manera que alega el demandado. Nada hay tampoco que revele que Jesús González continuó sembrando tabaco para Francisco Franquis, circunstancia que hubiera llevado al tribunal a la conclusión de que liquidada la cosecha de 1930–1931, las partes hubiesen estipulado en cualquier forma la prolongación del crédito hipotecario. Si este crédito hipotecario tuviera fecha posterior a la entrega del tabaco y posterior a la fecha en que el contrato de refacción se celebró, indudablemente que el tribunal estaría en condiciones de considerar esta situación a los fines de juzgar si era una obligación independiente y no colateral al contrato refaccionario. Todas las circunstancias inducen al juzgador a resolver que ello no es así. Tomando en consideración todas estas circunstancias, opina la corte que el demandado no debe a los demandantes la cantidad de $500 y sí la suma de $36.50 con intereses al 12 por ciento desde el mes de marzo de 1931 hasta la completa solvencia de la misma, con más $200 para costas y honorarios de abogado.''

Los demandantes, sin embargo, se quejan en los siguientes señalamientos de error de que se admitiera la evidencia:

''1. La corte cometió error por haber permitido que el testigo Jesús González García declarara en cuanto al negocio que tuvo con don Francisco Franquis.

''2. La corte cometió error al negar la eliminación de la declaración del testigo Marcos Torres.

''3. La corte cometió error al permitir que el testigo Blas Mangual declarara sobre manifestaciones hechas por el finado señor Franquis.

''4. La corte cometió error al apreciar la prueba por no haber aplicado el artículo 1201 del Código Civil, edición de 1930.''

En gran parte los apelantes descansan en el caso de *Wilcox* v. *Axtmayer*, 23 D.P.R. 343. Ese caso ha sido distinguido en el de *Freyre* v. *Sevillano*, 28 D.P.R. 396, y quizá en otros. Mas la mejor forma de contestar las objeciones es transcribiendo la prueba ofrecida por el demandado, tal

como se relaciona en el pliego de excepciones y exposición del caso:

"Se ofreció como prueba una certificación expedida por el Registrador de la Propiedad de Caguas, creditiva de que el día 17 de noviembre de 1930 fué otorgada por Jesús González García a favor de Francisco Franquis una escritura de refacción para la siembra de tabaco durante el cosecho de 1930 al 1931.

"La parte demandante se opuso a la admisión del documento por ser inmaterial e impertinente y la corte lo admitió tomando una excepción la demandante.

"Se llamó como testigo a Jesús González García y a preguntas de su abogado declaró que se llama como queda dicho, que conoció a don Francisco Franquis y que en noviembre de 1930 tuvo con él un negocio de sembrar seis cuerdas de tabaco.

"Entonces el abogado del demandante se opuso a que siguiera declarando en cuanto al negocio que tuvo con don Francisco Franquis por ser éste un pleito con los herederos de dicho señor, y de acuerdo con la jurisprudencia en el caso de *Wilcox* v. *Axtmayer* él tiene los labios sellados para declarar en cuanto a ese particular.

"La corte permitió que declarara respecto a lo que él hubiera hecho.

"Continuó declarando que en el año 1930 sembró seis cuerdas de tabaco en dos fincas de tres cuerdas cada una: que se hizo el contrato de refacción entre él y don Francisco Franquis y que además le hipotecó las dos fincas de seis cuerdas: que eso era un solo negocio: que sembró el tabaco, lo recogió y se lo entregó a Blas Mangual, que era el que conducía el tabaco a Francisco Franquis y de quien era empleado. Que Blas Mangual llevó el tabaco al almacén de don Francisco Franquis y lo entregó: que entregó veinte y ocho quintales con veinte y cinco libras: que le liquidó el tabaco a diez y ocho dólares: que la entrega se hizo en el mes de marzo del año 1931.

"Repreguntado por la parte demandante declaró que él vino donde Franquis y le dejó el tabaco como liquidado a $18: que no le dieron ningún papel ni recibo: que quien cogió el tabaco daba una nota y que esa nota se le perdió cuando la tormenta de 'San Felipe'.

"Al preguntársele si don Francisco Franquis le entregó la nota esa contestó que él la mandó a buscar un día y no le entregó la nota. Que estuvo en la oficina del abogado, que le dijo que si dejaba la cuenta en doscientos cincuenta dólares y él se marchó y no le contestó. Que no recuerda si después de presentado este pleito estuvo

en la oficina del abogado y vuelto a preguntar declaró que estuvo un día. Que el declarante no le dijo nada al abogado.

"A preguntas del juez declaró que firmó un contrato de refacción con don Francisco Franquis, que el dinero lo tomaba semanalmente para pagar peones el sábado: que le daba más o menos veinte, veinticinco, treinta o cuarenta dólares: que Franquis no le daba para gastos de familia: que no recuerda las semanas que duró la refacción, pero que la siembra y cosecho de tabaco duró desde octubre hasta marzo. Que recibió quinientos dólares. Que cuando se hizo la liquidación quedó a deber treinta y seis y pico de dólares más los intereses.

"Que el tabaco producía $508.50 y los intereses eran treinta y seis dólares y centavos.

"Llamado el testigo Marcos Torres después de prestar juramento, fué examinado por el abogado del demandado y declaró que se llama Marcos Torres, conocía a Francisco Franquis y a Jesús González García: que en el año 1930 era empleado de la casa de Franquis y lo que sabe de esto era que un día pasaba por en casa de Jesús González García y le dijo 'que si yo podía darle refacción' y yo le dije que yo no tenía, que iría a ver si don Francisco Franquis le daba la refacción—y entonces 'fuí donde él' y le dijo que le daba la refacción siempre que Jesús González García le diera una hipoteca por las seis cuerdas de terreno: que además le dijo, que además de darle la garantía del tabaco necesitaba una hipoteca por las seis cuerdas de terreno. Que el declarante se lo dijo a Francisco Franquis y él fué allá por la tarde.

"Que no sabe ante qué notario se hicieron los contratos: que él vino después y le dijo que había hecho un negocio con Jesús González.

"Se pidió la eliminación por ser referencias de un muerto. La corte declaró sin lugar la eliminación y se anotó una excepción.

"Llamado el testigo Blas Mangual después de prestar juramento, declaró que conocía a don Francisco Franquis, que era un comerciante de tabaco; primero de provisiones y luego de tabaco. Que vivía en Juncos: que conoció personalmente y conoce a don Jesús González García: que en el año 1930 para noviembre trabajaba industrialmente: que vivía en el pueblo y tenía un carrito para repartir provisiones, materiales, tabaco y esas cosas: que conducía tabaco de varios, pero tenía la conducción de don Francisco Franquis y de todos los refaccionados y compradores que él tenía por allá. Que el tabaco de don Jesús González García lo conducía del barrio

Rincón al almacén de don Francisco Franquis y que éste le autorizó para que lo recogiera: que el tabaco estaba en veintidós bultos y que contenía veintiocho quintales y una arroba y que estaba presente don Francisco Franquis cuando se despachó.

"Entonces el abogado del demandado hizo la siguiente pregunta:

"'¿Hizo alguna manifestación el señor Franquis?'

"Se opuso el abogado del demandante y la corte permitió la pregunta, tomando excepción la parte demandante.

"Para el día ese le dieron un recibo del tabaco: que el recibo se lo dió un empleado de don Francisco Franquis llamado Pedro Calderón: que don Francisco Franquis le dijo que si don Jesús González García había mandado todo el tabaco, que si no le quedaba ninguno que arreglar que fuera él a arreglarlo por allá, que se lo pagaría a $18 y que con eso saldaría la cuenta, y que si quedaba a deber algo sería muy poco. Que eso se lo dijo al señor Jesús González García y éste le dijo que se lo dejara allá porque era de él: que el tabaco se entregó en el mes de marzo.

"Preguntado por el abogado del demandante qué hizo con los recibos, declaró que no eran recibos, que eran notas de conduce que se las daban a ellos la casa y se les daba la cuenta para que les pagaran el transporte.

"Que trajo el tabaco en un trocito (camioneta) a fines de marzo y preguntado si sabe si se liquidó a un precio determinado contestó que él mandó a ofrecer a $18: que no era empleado de Francisco Franquis ni de Jesús González García: que era conductor del tabaco de don Francisco Franquis: que fué al campo en seguida a decirle eso a don Jesús González García porque diariamente estaba caminando por allí, y le dijo que si no tenía más ninguno, que si quería liquidarlo que fuera y no sabe si cerraron la operación porque él le dijo que lo había dejado para otro día.

"A preguntas del demandado contestó que eso se lo dijo Jesús González García y que quien le pagó la conducción del tabaco fué don Francisco Franquis y que no sabe a cómo se vendía."

El apelado indica que la doctrina del caso de Wilcox, según la cual no se permite reproducir las manifestaciones de un finado, es aplicable solamente a aquellos casos en que no exista prueba documental para sostener la relación con el finado. Es aparente que hubo bastante prueba que no fué objetada y que alguna fué admitida sin objeción y más tarde se solicitó su exclusión mediante moción para eliminar.

Independientemente de la prueba objetada, la corte tuvo suficiente evidencia ante sí para llegar a la conclusión de que el demandado en realidad había celebrado un contrato refaccionario con el finado. Este contrato es una de las cuestiones principales del caso. Es difícil imaginarse que el deudor otorgara dos contratos el mismo día, a menos que uno estuviera relacionado con el otro. Conforme la corte resolvió, el de hipoteca era un contrato colateral.

En su consecuencia, creemos que la admisión de la prueba, aun si ésta era objetable, fué un error no perjudicial a los demandantes.

El recurso interpuesto por los demandantes debe ser desestimado.

■ Consideremos ahora el recurso núm. 8086 interpuesto por el demandado contra la sentencia que le condenó a pagar a los demandantes la suma de $36.50 con intereses al 12 por ciento anual desde marzo de 1931 hasta la completa solvencia de la misma, con más $200 para el pago de costas y honorarios de abogado.

Admite el demandado apelante que él adeuda a los demandantes $36.50, como balance resultante a favor del causante de los demandantes al hacerse la liquidación del contrato de refacción entre él y el Sr. Franquis; pero señala como error de la corte inferior el haberle condenado al pago de honorarios de abogado, no obstante haber resuelto que el demandado no era deudor a los demandantes de la suma principal que éstos trataron de cobrarle indebidamente.

Tiene razón el demandado apelante. Si los demandantes hubiesen reclamado al demandado la suma en realidad pendiente de pago bajo el contrato de refacción, o sea $36.50, probablemente el demandado la hubiese pagado sin necesidad de que se le demandase. Trataron los demandantes de cobrar lo que no se les adeudaba, por haber sido satisfecha la suma principal a su causante, y obligaron con ello al demandado a defenderse y a incurrir en los gastos y costas de un pleito.

En su contestación a la demanda el demandado apelante terminó diciendo:

"El demandado de esta Hon. Corte suplica que se sirva dictar sentencia declarando sin lugar la demanda en todas sus partes *excepto en cuanto se refiere al pago de la suma de $36.50 que quedó a deber el demandado al Sr. Franquis en marzo de 1931,* al liquidarse el contrato de préstamo refaccionario;...."

Habiendo propuesto y consentido el demandado apelante que se dictara sentencia en contra suya por la suma de $36.50, y no habiendo los demandantes obtenido una sentencia más favorable, o sea por una suma mayor que la ofrecida como transacción por el demandado, éste no puede ser condenado en costas. Véase: artículo 313 del Código de Enjuiciamiento Civil. Erró, pues, la corte sentenciadora al condenarle al pago de costas y honorarios.

*Por las razones expuestas, debe modificarse la sentencia recurrida en el sentido de dejar sin efecto la obligación que se impone al demandado apelante de pagar a los demandantes la suma de $200 para costas y honorarios, y así modificada se confirma en cuanto a sus otros pronunciamientos.*

El Juez Asociado Sr. Wolf está conforme con la desestimación del recurso por el fundamento de no haberse radicado el debido récord en el caso 8081. En el caso 8086, por igual fundamento, opina que debe desestimarse el recurso del demandado y confirmarse la sentencia.

El Juez Asociado Sr. De Jesús no intervino.